BYRD'S LAWN & LANDSCAPING, INC., Plaintiff v. J. MARK SMITH, Defendant

No. COA00-187

(Filed 6 March 2001)

## 1. Unfair Trade Practices— trade secrets—confidential cost history records

Plaintiff lawn care business presented sufficient evidence to support the jury's verdict that plaintiff's confidential cost history records were a trade secret under N.C.G.S. § 66-152 and that defendant former employee who had served as vice-president and general manager misappropriated them, because the evidence taken in the light most favorable to plaintiff reveals that plaintiff's cost history records were "a compilation of information, method, technique, or process" which were treated by plaintiff as confidential, were neither known outside plaintiff's business nor shared with its employees, had value to plaintiff and potential value to plaintiff's competitors, and could not be easily acquired by others who had not performed similar services on the same properties from which plaintiff's cost history information was acquired. N.C.G.S. § 66-152(3).

## 2. Unfair Trade Practices— trade secrets—confidential cost history records—misappropriation

Plaintiff lawn care business's evidence in an unfair and deceptive trade practices action was sufficient to be submitted to the jury on the question of whether defendant former employee who had served as vice-president and general manager misappropriated plaintiff's confidential cost history records, because: (1) plaintiff offered evidence tending to show that after defendant had been working for plaintiff for about ten years and had become general manager, the president taught him how to prepare bids using the confidential cost history information; (2)

defendant participated with the president in preparing bids for their largest account; and (3) upon starting his own business in competition with plaintiff, defendant submitted bids to that account and underbid plaintiff on eleven of fourteen properties. N.C.G.S. §§ 66-152(1) and 66-155.

### 3. Damages and Remedies— lost profits—appropriation and use of confidential cost history information

Plaintiff lawn care business offered sufficient evidence to sustain the jury's damage award for lost profits against defendant former employee who began a competing business through the appropriation and use of plaintiff's confidential cost history information, because: (1) plaintiff offered evidence with respect to the previous business relationship between plaintiff and their largest account; and (2) plaintiff offered evidence to show the gross revenues which would have been realized upon the maintenance contracts for each of the eight properties for which defendant subsequently obtained maintenance contracts from this account and the profit margins which plaintiff would have realized on those revenues.

### 4. Evidence— percentage of profits on gross revenue—lost profits—lay opinion

The trial court did not err by permitting defendant lawn care business's president to testify as to the percentage of profits realized on plaintiff's gross revenue and as to plaintiff's lost profits due to defendant former employee's use of plaintiff's cost history records in securing eight of plaintiff's contracts, because: (1) N.C.G.S. § 8C-1, Rule 701 permits a lay witness to testify as to opinions based on the witness's own perception; and (2) the president testified that his opinion was based on his recollection of the revenues realized by plaintiff on the eight contracts and his knowledge, based on experience, of plaintiff's percentage of profits on gross sales.

### 5. Unfair Trade Practices— orally requested jury instruction—lost profits—special instructions required to be in writing

The trial court did not abuse its discretion in an unfair and deceptive trade practices case by refusing to give jury instructions on the proof required for a finding of lost profits even though defense counsel verbally requested such instructions, because N.C.G.S. § 1A-1, Rule 51(b) requires that a request for

special instructions be in writing, signed by counsel, and submitted to the trial court before the court instructs the jury.

Appeal by defendant from judgment entered 6 July 1999 and order entered 11 August 1999 by Judge Beverly T. Beal in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 January 2001.

*Dozier Miller Pollard & Murphy, by Richard S. Gordon, for plaintiff-appellee.*

*Rayburn Smith Cooper & Durham, P.A., by James B. Gatehouse, for defendant-appellant.*

MARTIN, Judge.

Plaintiff, Byrd's Lawn & Landscaping, Inc., a North Carolina corporation with its principal office in Mecklenburg County, brought this action alleging claims for relief for breach of fiduciary duty; misappropriation of confidential business information and a violation of G.S. § 66-152 *et seq.*, the Trade Secrets Protection Act; wrongful interference with contract; and unfair and deceptive practices in violation of G.S. § 75-1.1. Plaintiff alleged that it was engaged in providing landscape and lawn maintenance services for commercial properties, that defendant had been employed by plaintiff as its vice-president and general manager, and that his duties had included marketing plaintiff's services and developing business relationships with its customers. Plaintiff alleged that defendant, in the course of his employment, had access to plaintiff's confidential financial information and customer information and that while he was so employed, defendant solicited various of plaintiff's customers to transfer their business to him. Defendant then terminated his employment with plaintiff and opened a competing business, using the financial information which he had acquired from plaintiff to underbid plaintiff for its customers' business. Plaintiff alleged that it had sustained lost profits and sought treble damages and injunctive relief.

Defendant filed an answer in which he denied the material allegations of the complaint. When the case was called for trial, plaintiff submitted to a voluntary dismissal of its claims for breach of fiduciary duty and wrongful interference with contract; the trial proceeded upon the claims for violation of the Trade Secrets Protection Act and unfair and deceptive practices. At the close of all the evidence, the parties stipulated that if the jury found defendant had mis-

appropriated plaintiff's trade secrets, such conduct would constitute an unfair and deceptive practice; if the jury found there had been no misappropriation of plaintiff's trade secrets, defendant would be entitled to judgment on the G.S. § 75-1.1 claim as well.

The jury answered the issues finding that plaintiff's cost history records were a trade secret, that defendant misappropriated the trade secret, and that his conduct in so doing proximately caused injury to plaintiff's business in the amount of $41,000.00. The trial court trebled the damages pursuant to G.S. § 75-16 and entered judgment in favor of plaintiff in the amount of $123,000.00 plus interest and costs. Defendant's motion for judgment notwithstanding the verdict, and alternatively, a new trial, was denied. Defendant appeals.

---

[1] The primary issue raised by defendant's assignments of error is whether plaintiff presented sufficient evidence to support the jury's verdict that plaintiff's cost history records were a trade secret and, if so, that defendant misappropriated them. Defendant contends he was entitled to judgment as a matter of law regarding plaintiff's misappropriation of trade secrets claim and his dispositive motions for directed verdict and judgment notwithstanding the verdict should have been granted.

The question presented by a defendant's motion for directed verdict is whether the plaintiff's evidence is sufficient "to take the case to the jury and support a verdict for the plaintiff." *Manganello v. Permastone, Inc.*, 291 N.C. 666, 670, 231 S.E.2d 678, 680 (1977). The plaintiff's evidence "must be taken as true and all the evidence must be considered in the light most favorable to the plaintiff, giving him the benefit of every reasonable inference to be drawn therefrom." *Id.* The motion should be denied unless it appears, as a matter of law, that the plaintiff is not entitled to recover under any view of the evidence. *Id.* A motion for judgment notwithstanding the verdict is essentially a renewal of an earlier motion for directed verdict and presents the same question. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 329 S.E.2d 333 (1985).

A trade secret is defined as:

business or technical information, including but not limited to a formula, pattern, program, device, *compilation of information, method, technique, or process* that:

BYRD'S LAWN & LANDSCAPING, INC. v. SMITH

[142 N.C. App. 371 (2001)]

a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(3) (emphasis added). In determining whether information should be classified as a trade secret, the following factors are properly considered:

(1) the extent to which information is known outside the business;

(2) the extent to which it is known to employees and others involved in the business;

(3) the extent of measures taken to guard secrecy of the information;

(4) the value of information to business and its competitors;

(5) the amount of effort or money expended in developing the information; and

(6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Wilmington Star-News, Inc. v. New Hanover Regional Medical Center, Inc.*, 125 N.C. App. 174, 180-81, 480 S.E.2d 53, 56 (1997). Although North Carolina courts have not answered the precise question of whether confidential cost history records qualify as a trade secret, we find guidance in, and agree with, the language of the Tenth U.S. Circuit Court of Appeals in *Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.*, 584 F.2d 946, 952 (10th Cir. 1978) where the Court said:

Confidential data regarding operating and pricing policies can also qualify as trade secrets. It is apparent that the ability to predict a competitor's bid with reasonable accuracy would give a distinct advantage to the possessor of that information (citation omitted).

In the present case, plaintiff presented sufficient evidence to support a finding that its historical cost information was a trade secret as defined by G.S. § 66-152. Plaintiff offered evidence through the testi-

mony of its president, Bobby Byrd, Sr., that it had maintained detailed cost records as to the materials, labor and equipment required for each of its contracts over a period of seventeen years. The information was kept by Mr. Byrd, first in a notebook and then on computer. The information was treated as confidential by Mr. Byrd, who used the information to prepare bids for the various properties upon which plaintiff performed services. Many of the accounts had to be rebid each year. Mr. Byrd testified that someone with access to these records could use the information to underbid plaintiff on any of its contracts. Therefore, Mr. Byrd did not even share the information with plaintiff's employees. Notwithstanding evidence offered by defendant that similar information may have been ascertainable by anyone in the lawn maintenance and landscape business, plaintiff's evidence, when considered in the light most favorable to it, is sufficient to sustain a finding by the jury that plaintiff's cost history records were "a compilation of information, method, technique, or process" which was treated by plaintiff as confidential, was neither known outside plaintiff's business nor shared with its employees, which had value to plaintiff and potential value to plaintiff's competitors, and which could not be easily acquired by others who had not performed similar services on the same properties from which plaintiff's cost history information was acquired.

[2] Misappropriation is defined as:

> acquisition, disclosure, or *use of a trade secret of another* without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret.

N.C. Gen. Stat. § 66-152(1) (emphasis added). Misappropriation of a trade secret is established by introducing substantial evidence that the person against whom relief is sought: "(1) Knows or should have known of the trade secret; and (2) Has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C. Gen. Stat. § 66-155. Such evidence may be rebutted, however, if the person against whom relief is sought presents substantial evidence that he acquired the information through "independent development." *Id.*

In the present case, plaintiff offered evidence tending to show that after defendant had been working for plaintiff for about ten years

and had become general manager, Mr. Byrd taught him how to prepare bids using the confidential cost history information. One of plaintiff's larger customers was Summit Properties, Inc., which owned fourteen properties upon which plaintiff performed services. Defendant had participated with Mr. Byrd in preparing bids for the Summit account and had reviewed the historical cost information relating to those properties shortly before leaving his employment with plaintiff. Upon starting his own business in competition with plaintiff, defendant submitted bids to Summit and underbid plaintiff on eleven of the fourteen properties. Defendant was awarded contracts for eight of the properties. Such evidence is sufficient circumstantial evidence to sustain a finding that defendant knew of the confidential information, had the opportunity to acquire it for his own use, and did so. Although defendant testified in rebuttal that he was able to compile his bids using his own experience and without resort to the information contained in plaintiff's records, plaintiff's evidence was sufficient to be submitted to the jury on the question of whether defendant misappropriated the confidential cost records.

[3] Defendant also contends plaintiff offered insufficient evidence to sustain the jury's damage award. The party seeking damages has the burden of proving them. *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 547, 356 S.E.2d 578, 586, *reh'g denied*, 320 N.C. 639, 360 S.E.2d 92 (1987). "As part of its burden, the party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Id.* at 547-48, 356 S.E.2d at 586 (citation omitted).

With respect to damages for lost profits, our courts have refused to permit recovery based upon speculative forecasts, requiring proof that absent the wrong, profits would have been realized in an amount provable with "reasonable certainty." For example, in *Keith v. Day*, 81 N.C. App. 185, 343 S.E.2d 562 (1986), this Court addressed the difficulty in calculating damages for lost profits in the context of the breach of a non-compete agreement: "The indefiniteness consequent upon this difficulty does not, however, by itself preclude relief . . . . 'What the law does require in cases of this character is that the evidence shall with a fair degree of probability establish a basis for the assessment of damages.' " *Id.* at 196, 343 S.E.2d at 569 (citation omitted). Moreover, there is no bright-line rule in determining what amount of evidence is sufficient to establish lost profits:

[W]e have chosen to evaluate the quality of evidence of lost profits on an individual case-by-case basis in light of certain criteria to determine whether damages have been proven with 'reasonable certainty.'

*Iron Steamer, Ltd. v. Trinity Restaurant, Inc.*, 110 N.C. App. 843, 847-48, 431 S.E.2d 767, 770 (1993). We think those principles are applicable here as well.

In the present case, in addition to the evidence with respect to the previous business relationship between plaintiff and Summit, plaintiff offered evidence to show the gross revenues which would have been realized upon the maintenance contracts for each of the eight Summit properties for which defendant subsequently obtained maintenance contracts, and the profit margins which plaintiff would have realized on those revenues. We hold this evidence established a sufficient basis to support a jury finding that, absent defendant's appropriation and use of plaintiff's confidential cost information, plaintiff would have realized profits, and for the jury to calculate the amount of those profits with reasonable certainty.

[4] In a related argument, however, defendant contends the trial court erred in permitting Mr. Byrd to testify as to the percentage of profits realized on plaintiff's gross revenues, and as to plaintiff's lost profits due to defendant's use of the cost history records in securing the eight Summit contracts, because Mr. Byrd had not been qualified as an expert and his testimony was not based on sufficient factual support. We reject his argument. G.S. § 8C-1, Rule 701 permits a lay witness to testify as to opinions based on the witness's own perception. Mr. Byrd testified that his opinion was based on his recollection of the revenues realized by plaintiff on the eight Summit contracts and his knowledge, based on experience, of plaintiff's percentage of profit on gross sales. This assignment of error is overruled.

[5] Finally, defendant assigns error to the trial court's refusal to give jury instructions, verbally requested by defendant's counsel, with respect to the proof required for a finding of lost profits. Our review of the transcript reveals that counsel orally inquired of the trial court as to whether there would be "a special instruction on the lost profit [sic] specifically talking about proving it to a reasonable degree of certainty." Counsel acknowledged that she had no written request, nor did she provide the court with any language for the requested instruction. G.S. § 1A-1, Rule 51(b) requires that a request for special

instructions be in writing, signed by counsel, and submitted to the court before the court instructs the jury. Because defendant did not comply with the requirements of Rule 51(b), the trial court acted properly within its discretion in denying the request. *Hord v. Atkinson*, 68 N.C. App. 346, 315 S.E.2d 339 (1984). Even so, the trial court's instructions included the following:

> The plaintiff's damages are to be reasonably determined from the evidence presented in the case. The plaintiff is not required to prove with mathematical certainty the extent of the injury to his business in order to recover damages. Thus, the plaintiff should not be denied damages simply because they cannot be calculate [sic] with exactness or a high degree of mathematical certainty. *An award of damages must be based on evidence which shows the amount of the plaintiff's damages with reasonable certainty.* However, you may not award any damages based upon mere speculation or conjecture (emphasis added).

This assignment of error is overruled.

No error.

Judges TIMMONS-GOODSON and THOMAS concur.