Bldg. Ctr., Inc. v. Carter Lumber, Inc., 2016 NCBC 77.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 4186

THE BUILDING CENTER, INC., )
 )
     Plaintiff, )
 )
     v. )
 )
CARTER LUMBER, INC. and )
TIMOTHY HURD, )
 )
     Defendants. )

**OPINION AND ORDER**

THIS MATTER came before the Court upon Defendants Carter Lumber, Inc. and Timothy Hurd's Motion to Dismiss Plaintiff The Building Center, Inc.'s Amended and Verified Complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") (the "Motion").

THE COURT, having considered the Motion, briefs in support of and in opposition to the Motion, and arguments of counsel at the hearing, concludes that the Motion should be DENIED in part, and GRANTED in part, for the reasons below.

*Moore & Van Allen, PLLC, by Benjamin P. Fryer, Esq. and William M. Butler, Esq. for Plaintiff The Building Center, Inc.*

*Van Hoy, Reutlinger, Adams & Dunn, PLLC, by Stephen J. Dunn, Esq. for Defendants Carter Lumber, Inc. and Timothy Hurd.*

McGuire, Judge.

FACTUAL AND PROCEDURAL BACKGROUND

1. Plaintiff The Building Center, Inc. ("Plaintiff") is engaged in the supply and distribution of building materials and has six locations in North and South

Carolina, including Pineville and Gastonia, North Carolina, and Rock Hill, South Carolina.

2. Defendant Carter Lumber, Inc. ("Carter Lumber") is engaged in the supply and distribution of building materials and has nearly 150 locations across 12 states, including Charlotte, North Carolina, and Rock Hill, South Carolina.

3. Defendant Timothy Hurd ("Hurd") served as Residential Sales Manager for Plaintiff's Pineville, Gastonia, and Rock Hill locations. Hurd was employed with Plaintiff from approximately October 8, 2012, through January 23, 2015. In August 2015, Carter Lumber hired Hurd. Hurd and Carter Lumber are referred to collectively as "Defendants."

4. As a Residential Sales Manager for Plaintiff, Hurd "had access to, and acquired detailed knowledge of . . . Plaintiff's confidential and proprietary business information" including: "names and contacts of customers"; "customer preferences, including the needs, requirements, and values of [Plaintiff's] customers"; "sales and marketing strategies"; "pricing structures"; "margins and profits"; "manufacturing technologies"; and, "other confidential business information" (designated by Plaintiff in the Complaint as "Trade Secrets"). (Am. Compl. ¶ 11.) Plaintiff "invested substantial time, money, and resources in developing and maintaining business relationships with customers and prospective customers." (*Id.* ¶ 13.) Plaintiff alleges the Trade Secrets and customer relationships are "not generally known or readily ascertainable through independent development . . . ." (*Id.* ¶ 14.) Plaintiff took "reasonable measures to protect the Trade Secrets from disclosure," which included

"security measures, including but not limited to password-protected login, controlled and permission-restricted access on a need-to-know basis, and confidentiality policies and/or agreements." (*Id.* ¶¶ 15–16.)

5.    Hurd also was responsible for "the employment, development, and performance of salespersons and other employees in [Plaintiff]'s Pineville, Gastonia, and Rock Hill" locations. (*Id.* ¶ 17.) Hurd had "detailed knowledge" of "information such as salaries, commissions, bonuses, benefits, and employment terms" of these salespersons and employees. (*Id.* ¶ 18.)

6.    Hurd resigned from Plaintiff's employment on January 23, 2015. Plaintiff alleges "upon information and belief" that before resigning, "Mr. Hurd misappropriated [Plaintiff]'s Trade Secrets by accessing and taking Trade Secrets in physical and/or electronic form." (*Id.* ¶ 24.)

7.    Plaintiff alleges "upon information and belief" that Carter Lumber hired Hurd "specifically to exploit the misappropriated Trade Secrets and his detailed knowledge of and relationships with certain [Plaintiff's] salespersons and employees to target such salespersons and employees and lure them to Carter Lumber." (*Id.* ¶ 25.) Carter Lumber intended to "carry out a plan, spearheaded by Mr. Hurd, to acquire [Plaintiff]'s most important customers for the dual purpose of crippling [Plaintiff]'s ability to compete and immediately establishing Carter Lumber as a competitive building materials supplier in the Carolinas." (*Id.* ¶ 28.) Plaintiff alleges that Carter Lumber paid Hurd a $5,000 commission for every employee he successfully hired away from Plaintiff. (*Id.* ¶ 26.) Plaintiff further alleges, that in

order to facilitate the hiring away of its employees, Carter Lumber authorized Hurd to offer Plaintiff's employees "a bonus and significantly increased compensation to join Carter Lumber." (*Id.* ¶ 36.)

8. Plaintiff claims that Defendants have successfully carried out Carter Lumber's plan and hired several of its key salespersons and solicited a number of its customers to take their business to Carter Lumber. (*Id.* ¶¶ 31–42.) Additionally, Plaintiff claims that Defendants continue to solicit Plaintiff's employees and customers. (*Id.* ¶¶ 42–57.) As such, Defendants have "crippled [Plaintiff]'s ability to conduct business from its Rock Hill office," and "[i]f continued, [Defendants'] conduct similarly will incapacitate [Plaintiff]'s business operations in the Gastonia and Pineville offices." (*Id.* ¶ 58.)

9. Plaintiff alleges that the foregoing actions "demonstrate Carter Lumber's intent to conduct a coordinated pirating of [Plaintiff]'s top salespersons in order to acquire [Plaintiff]'s Trade Secrets, confidential information, customers, and goodwill and to cripple [Plaintiff]'s ability to do business and compete with Carter Lumber." (*Id.* ¶ 59.) Plaintiff further alleges that Defendants' conduct "amounts to anti-competitive business tactics designed to restrain [Plaintiff]'s ability to compete for both the retention of its employees and the business of its customers." (*Id.* ¶ 60.)

10. On March 3, 2016, Plaintiff initiated this lawsuit by filing the initial Complaint in Mecklenburg County Superior Court. On March 17, 2016, Defendants designated this case to the North Carolina Business Court.

11.     On April 7, 2016, Plaintiff filed the Amended and Verified Complaint (hereinafter referred to as the "Complaint"). The Complaint alleges claims against Defendants for violation of North Carolina's Trade Secrets Protection Act ("TSPA") (Count One), tortious interference with contract (Count Two), tortious interference with prospective economic advantage (Count Three), and, against Carter Lumber individually, for unfair and deceptive trade practices ("UDTP") (Count Four). The Complaint seeks both injunctive relief and monetary compensation for damages sustained as a result of Defendants' conduct.

12.     On April 8, 2016, Defendants filed the Motion, seeking dismissal of all of Plaintiff's claims. After having been fully briefed and argued in front of the Court, the Motion is now ripe for determination.

DISCUSSION AND ANALYSIS

13.     Defendants move to dismiss Plaintiff's claims pursuant to Rule 12(b)(6). On a motion under Rule 12(b)(6), the Court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In making this determination, the Court must take all well-pleaded allegations of the complaint as true. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). Nonetheless, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Strickland v. Hedrick*, 194 N.C. App. 1, 20, 669 S.E.2d 61, 73 (2008). In deciding a motion to dismiss, the Court must always bear in mind that North Carolina remains

a "notice pleading" state, *Radcliffe v. Avenel Homeowners Ass'n*, 2016 N.C. App. LEXIS 824, *52, 789 S.E.2d at 893 (2016), and a plaintiff is only required to set forth "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." G.S. § 1A-1, Rule 8. "The complaint must be liberally construed," and should not be dismissed "unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Holleman v. Aiken*, 193 N.C. App. 484, 491, 668 S.E.2d 579, 584–85 (2008) (rejecting the "plausibility standard" of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560, 127 S. Ct. 1955 (2007)).

### a. Misappropriation under North Carolina's Trade Secrets Protection Act

14. In its First Count in the Complaint, Plaintiff alleges that Defendants misappropriated its Trade Secrets in violation of the TSPA. Plaintiff alleges that Defendants' actions, "including taking and disclosing [Plaintiff's] Trade Secrets, pirating [Plaintiff]'s salespersons who were entrusted with and possessed the Trade Secrets, and using the Trade Secrets in order to compete against [Plaintiff]" amount to a misappropriation of trade secrets that directly and proximately caused, and will continue to cause, Plaintiff damage. (Am. Compl. ¶ 65.) Defendants argue for dismissal of this claim on the grounds that: (1) Plaintiff has not identified the Trade Secrets allegedly misappropriated with sufficient particularity to state a valid claim under the TSPA; (2) the allegations fail to establish any connection between the allegedly misappropriated Trade Secrets and the alleged measures taken to protect

their secrecy, or, alternatively that such measures, as alleged, are insufficient for vagueness; and (3) Plaintiff fails to allege with sufficient specificity the acts by which Defendants misappropriated the Trade Secrets. (Defs.' Br. Supp. Mot. Dis. 2–5.)

15. North Carolina's TSPA provides that the owner of a trade secret "shall have a remedy by civil action for misappropriation of [the] trade secret." G.S. § 66-153. The TSPA defines a "Trade Secret" as:

> [B]usiness or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

G.S. § 66-152(3). In North Carolina, courts consider the following factors in determining whether information constitutes a trade secret:

> (1) [T]he extent to which information is known outside the business; (2) the extent to which it is known to employees and others involved in the business; (3) the extent of measures taken to guard secrecy of the information; (4) the value of information to business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Wilmington Star-News, Inc. v. New Hanover Reg'l Med. Ctr., Inc.*, 125 N.C. App. 174, 180–81, 480 S.E.2d 53, 56 (1997). "Misappropriation" is defined as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or

consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." G.S. § 66-152(1).

16. "To plead misappropriation of trade secrets, 'a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has . . . occur[ed].' " *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 510–11, 606 S.E.2d 359, 364 (2004) (quoting *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003)). The complaint must also set forth with sufficient specificity the acts by which the alleged misappropriation occurred. *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 327, 660 S.E.2d 577, 586 (2008). A complaint making only "general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is insufficient to state a claim for misappropriation of trade secrets." *Id.*, 660 S.E.2d at 585–86 (internal quotation marks omitted).

*i. Identification of the allegedly misappropriated trade secrets*

17. In the Complaint, Plaintiff defines its allegedly misappropriated trade secrets as "confidential and proprietary business information . . . such as: names and contacts of customers; customer preferences, including the needs, requirements, and values of [Plaintiff's] customers; sales and marketing strategies; pricing structures; margins and profits; manufacturing technologies; and other confidential business information." (Am. Compl. ¶ 11.) Plaintiff also alleges that Hurd had "detailed

knowledge" about Plaintiff's employees' compensation. (*Id.* ¶ 18.) Defendants argue that the allegations are "just a list of categories" and that "[t]here is nothing inherently confidential about any item on the list." Defendants refer to *VisionAIR* and *Washburn* as support for their position that Plaintiff's allegations are "sweeping and conclusory" and too "broad and vague" to set forth a valid misappropriation claim. (Defs.' Br. Supp. Mot. Dismiss 3.) Plaintiff, on the other hand, argues that its "identification of trade secrets stands in stark contrast to [those found insufficient in] *Washburn* and *VisionAIR*, and are more than sufficient to enable the Defendants to delineate that which they are accused of misappropriating," citing in support *Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC*, 174 N.C. App. 49, 620 S.E.2d 222 (2005), and *Byrd's Lawn & Landscaping, Inc. v. Smith*, 142 N.C. App. 371, 542 S.E.2d 689 (2001), both of which held that historical pricing and cost information and certain customer information could be trade secrets. (Pl.'s Br. Opp. Mot. Dismiss 7.)

18. The Court is mindful of the fact that at this stage of the case, Plaintiff's only obligation is to provide notice sufficient to enable Defendants to understand the trade secrets it "is accused of misappropriating and [the] court to determine whether misappropriation has . . . occur[ed].'" *VisionAIR, Inc.*, 167 N.C. App. at 510–11, 606 S.E.2d at 364. While Plaintiff's identification of its Trade Secrets here is threadbare, and further development of the facts may reveal that the identified information does not constitute a trade secret, when liberally construed the allegations are sufficient to put Defendants on notice as of the trade secrets that they are accused of misappropriating. *Compare cases holding allegations sufficient to raise trade secrets*

*claim*, *Ge Betz, Inc. v. Conrad*, 231 N.C. App. 214, 234, 752 S.E.2d 634, 649 (2013) ("pricing information, customer proposals, historical costs, and sales data"); *Sunbelt Rentals*, 174 N.C. App. at 55, 620 S.E.2d at 227 ("customer information, preferred customer pricing, employees' salaries, equipment rates, fleet mix information, budget information and structure of the business"); *Byrd's*, 142 N.C. App. at 375, 542 S.E.2d at 692 ("Confidential data regarding operating and pricing policies can also qualify as trade secrets. It is apparent that the ability to predict a competitor's bid with reasonable accuracy would give a distinct advantage to the possessor of that information."); *State ex rel. Utils. Comm'n v. MCI Telecomms. Corp.*, 132 N.C. App. 625, 634, 514 S.E.2d 276, 282 (1999) (concluding that a "compilation of information" involving customer data and business operations which has "actual or potential commercial value from not being generally known" is sufficient to constitute a trade secret under the TSPA); *S. Fastening Sys. v. Grabber Const. Prods., Inc.*, 2015 NCBC LEXIS 42, *11 (N.C. Super. Ct. 2015) ("confidential customer information and customer buying preferences and history . . . confidential freight information, sales reports, prices and terms books, sales memos, sales training manuals, commission reports, and information concerning [Plaintiff's] relationship with its vendors"); *with cases holding allegations insufficient to raise trade secrets claim*, *VisionAIR*, 167 N.C. App. at 511, 606 S.E.2d at 364 ("all information about Employer and its business, products, and services, furnished to the Employee[.]"); *Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 586 ("business methods; clients, their specific requirements and needs . . . other confidential information pertaining to [plaintiff's] business . . .

confidential client information and confidential business information"); *Aecom Tech. Corp. v. Keating*, 2012 NCBC LEXIS 9, *8 (N.C. Super. Ct. 2012) ("customer lists, customer contract information, pricing information, and product information"); *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, *68 (N.C. Super. Ct. 2011) ("proprietary formulas, methodologies, customer and pricing data and other confidential information"); *and Patch Rubber Co. v. Toelke*, 2013 U.S. Dist. LEXIS 84104, *11 (E.D.N.C. June 14, 2013) ("plans, pricing methods, processes, techniques, present and prospective customer lists, manufacturing processes, product formulations, recipes and customers' purchasing requirements, service requirements, product preferences, and purchasing volumes."). As such, Defendants are not entitled to dismissal of Plaintiff's claim for violation of the TSPA on this ground.

*ii. Efforts to maintain the secrecy of its alleged trade secrets*

19.    To constitute a trade secret under the TSPA, the information must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." G.S. § 66-152 (3)(b). "Plaintiffs must allege the reasonable efforts taken to maintain the secrecy of the information. The mere assertion that [trade secrets] were kept confidential is not enough to withstand a 12(b)(6) motion to dismiss." *McKee v. James*, 2013 NCBC LEXIS 33, *37–38 (N.C. Super. Ct. 2013) (citation omitted). In the Complaint, Plaintiff alleges that it took "reasonable measures to protect the Trade Secrets from disclosure," which included "security measures, including but not limited to password-protected login, controlled and permission-restricted access on a need-to-know basis, and confidentiality policies and/or agreements." (Am. Compl. ¶¶

15–16.) Defendants argue that Plaintiff's allegations (1) fail to establish any connection between the efforts taken to maintain secrecy and the allegedly misappropriated Trade Secrets, and (2) are too vague to constitute reasonable efforts as required under the TSPA. (Defs.' Br. Supp. Mot. Dismiss 3–4.)

20.     Defendants' arguments going to Plaintiff's allegations of the reasonable efforts to maintain the confidentiality of the Trade Secrets are unavailing. Generally, only where efforts to maintain secrecy of the allegedly misappropriated trade secrets were completely absent have North Carolina courts dismissed claims at the 12(b)(6) stage. *See Thortex, Inc. v. Standard Dyes, Inc.*, No. COA05-1274, 2006 N.C. App. LEXIS 1171 at *10 (June 6, 2006) ("Without *any* allegation of reasonable efforts to maintain secrecy, the mere assertion that [the information] [was] kept confidential is not enough to withstand a 12(b)(6) motion to dismiss") (emphasis added); *McKee*, 2013 NCBC LEXIS 33 at *37–39 (granting a Rule 12(b)(6) motion to dismiss where the plaintiff did not allege any efforts to protect the misappropriated trade secrets); *see also Eli Research,* 312 F. Supp. 2d at 757 ("Defendants assert that Plaintiffs have failed to allege sufficient reasonable efforts to maintain the secrecy of the alleged trade secrets."). Here, Plaintiff has alleged that it took at least three separate measures in an effort to protect the specific Trade Secrets it alleges were misappropriated by Defendants. These allegations are more than sufficient to survive a motion to dismiss.

*iii. Identification of the acts by which misappropriation occurred*

21. To state a claim for misappropriation, a plaintiff also must allege the acts by which the alleged misappropriation occurred. *Washburn*, 190 N.C.App. at 326, 660 S.E.2d at 586. Defendants' final argument for dismissal of the misappropriation claim contends that the Complaint provides "no indication [of] what the defendant took or how they took it," and that "Plaintiff's allegations of misappropriation amount to a tautology." (Defs.' Br. Supp. Mot. Dismiss 6.)

22. The Complaint states that: "Prior to resigning from TBC, upon information and belief, Mr. Hurd misappropriated TBC's Trade Secrets by accessing them and taking Trade Secrets in physical and/or electronic form." (Am. Compl. ¶ 24.) The Complaint also alleges that Carter Lumber hired Hurd to acquire Plaintiff's Trade Secrets, that Hurd has disclosed the Trade Secrets to Carter Lumber, and that Carter Lumber has used the Trade Secret information to hire Plaintiff's employees and solicit customers. Plaintiff has adequately plead the means by which Defendants have misappropriated the Trade Secrets.

23. In view of the foregoing, the Court concludes that Plaintiff's allegations are sufficient to state a claim for misappropriation under the TSPA. Defendants' Motion regarding Plaintiff's claim for misappropriation of trade secrets in violation of the TSPA (Count One) should be DENIED.

### b. Tortious Interference with Contract

24. In the Second Count, Plaintiff alleges that it had "valid and legally enforceable contracts with its employees," and the Defendants "purposefully interfered with [Plaintiff]'s employment contracts to undermine, cripple, and harm

[Plaintiff]." (*Id.* ¶¶ 70, 73.) Plaintiff does not otherwise specify the nature of the alleged contracts, and presumably Plaintiff means the "at will" employment agreements it had with its employees. Defendants appear to argue that the claim for tortious interference with contract should be dismissed because "[t]here is no allegation that any employee breached a contractual non-compete, non-solicitation, or confidentiality agreement by resigning from plaintiff and accepting employment with Carter Lumber." (Defs.' Br. Supp. Mot. Dismiss 7.) Defendants also contend that they were engaged in ordinary business competition and that Plaintiff has not sufficiently pleaded that Defendants lacked justification for their alleged interference. (*Id.* at 7–8.)

25.     To establish a claim for tortious interference with contract, a plaintiff must show: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *United Labs., Inc. v. Kuykendall,* 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citing *Childress v. Abeles,* 240 N.C. 667, 84 S.E.2d 176 (1954)).

26.     Plaintiff does not allege that the employees hired by Defendants were anything other than at-will employees. To the extent that Defendants contend that an at-will employment relationship cannot be the basis for a tortious interference claim unless the employee also was subject to restrictive covenants, they are simply incorrect as a matter of law. The North Carolina Supreme Court has expressly held

that employment contracts terminable at-will may serve as the basis for a tortious interference with contract claim in North Carolina even in the absence of a restrictive covenant. *Smith v. Ford Motor Co.*, 289 N.C. 71, 85, 221 S.E.2d 282, 290 (1976); *Childress*, 240 N.C. at 678, 84 S.E.2d at 184 ("The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others . . . by the weight of authority the unjustified interference of third persons is actionable although the employment is at will.") (citations omitted); *accord Lenzer v. Flaherty,* 106 N.C. App. 496, 512, 418 S.E.2d 276, 286 (1992); *Sides v. Duke Hosp.*, 74 N.C. App. 331, 346, 328 S.E.2d 818, 828, (1985); *HSG, LLC v. Edge-Works Mfg. Co.*, 2015 NCBC LEXIS 91, *14–16 (N.C. Super. Ct. 2015). Accordingly, the mere fact that Plaintiff's employees hired by Defendants were "terminable at-will does not provide the defendant a defense to the plaintiff's claim for tortious interference." *Peoples Sec. Life Ins. Co. v. Hooks,* 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988).

27. Defendants also argue that Plaintiff has not alleged that Defendants acted without justification in hiring Plaintiff's employees. The North Carolina Supreme Court has held that if the defendant's interference is "for a legitimate business purpose, his actions are privileged . . . . [C]ompetition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful." *Id.* This "privilege [to interfere] is conditional or qualified; that is, it is lost if exercised for a wrong purpose. In general, a wrong purpose exists where the act is done other than as a reasonable and *bona fide* attempt to protect the interest of the defendant

which is involved." *Id.* at 220, 367 S.E.2d at 650 (citing *Ford Motor Co.*, 289 N.C. at 91, 221 S.E. 2d at 294); *Kuykendall*, 322 N.C. at 662, 370 S.E.2d at 387 (holding that in *Hooks* "[w]e concluded that the fact that the plaintiff and defendant were in competition was sufficient to justify the defendant 'in offering the plaintiff's employees new jobs and locating them in their previously assigned territory' . . . however, we also emphasized that '[t]he privilege [to interfere] is conditional or qualified; that is it is lost if exercised for a wrong purpose' "). "If the defendant's only motive is a malicious wish to injure the plaintiff, his actions are not justified." *Hooks*, 322 N.C. at 221, 367 S.E.2d at 650.[1] The Court of Appeals has held that in order to survive dismissal, a complaint alleging tortious interference "must admit of no motive for interference other than malice." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 605, 646 S.E.2d 826, 832–33 (2007); *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 674, 541 S.E.2d 733, 738 (2001) ("[W]e have held that the complaint must admit of no motive for interference other than malice"); *Privette v. Univ. of N.C.*, 96 N.C. App. 124, 134–35, 385 S.E.2d 185, 191 (1989) (plaintiff's claim for tortious

---

[1] The malice required to overcome a justification of business competition is legal malice, and not actual malice. *Childress*, 240 N.C. at 675–76, 84 S.E.2d at182 ("It is not necessary, however, to allege and prove actual malice in the sense of personal hatred, ill will, or spite in order to make out a case for the recovery of compensatory damages against the outsider for tortiously inducing the breach of the third person's contract with the plaintiff. The term 'malice' is used in this connection in its legal sense, and denotes the intentional doing of the harmful act without legal justification."); *Murphy v. McIntyre*, 69 N.C. App. 323, 328–29, 317 S.E.2d 397, 401 (1984) (noting that legal malice "means intentionally doing a wrongful act or exceeding one's legal right or authority in order to prevent the making of a contract between two parties" and the act "must be taken with the design of injuring one of the parties to the contract or of gaining some advantage at the expense of a party"); *Robinson, Bradshaw, & Hinson, P.A. v. Smith*, 129 N.C. App. 305, 318, 498 S.E.2d 841, 851 (1998) ("A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties.").

interference dismissed where complaint alleged that university employees who terminated the plaintiff "had a legitimate professional interest in the plaintiff's performance of his duties"); *Sides*, 74 N.C. App. at 346, 328 S.E.2d at 829 (1985) ("[T]he complaint in an action for malicious interference with contract must clearly allege that the actions of the defendant were the cause of the plaintiff's damages and that the complaint admits of no other motive for those actions than malice.").

28. The Complaint in this case alleges that Plaintiff and Defendants were business competitors, and that "Carter Lumber desired to expand business operations in the Charlotte and Rock Hill areas." (Am. Compl. ¶¶ 7–9.) Plaintiff alleges, however, that Defendants were not motivated by legitimate business competition in hiring Plaintiff's employees and soliciting its customers, but instead intended to "crippl[e] [Plaintiff]'s ability to do business and compete with Carter Lumber" and that Defendants "used anti-competitive business tactics designed to restrain [Plaintiff]'s ability to compete for both retention of its employees and the business of its customers." (Id. ¶¶ 59, 60.) Plaintiff claims that Defendants "target[ed]" Plaintiff's best and "most critical employees" in order to "pirate" those employees and their customers. (*Id.* ¶¶ 25, 27, 29.) Plaintiff alleges Carter Lumber paid Hurd a $5,000 bonus for each of Plaintiff's employees he hired, and paid Plaintiff's employees "increased compensation . . . significantly above the market rate" that was "not sustainable on a long-term or permanent basis." (*Id.* ¶¶ 26, 37.) A former Carter Lumber Manager claims that Carter Lumber "instructed him to target [Plaintiff]'s Rock Hill office, shut it down, and take its business 'without paying for it.'" (*Id.* ¶ 30.)

Finally, Plaintiff alleges that "since hiring [Plaintiff's] employees, Carter Lumber and Mr. Hurd have misappropriated [Plaintiff]'s Trade Secrets and confidential information to acquire several of [Plaintiff]'s most important and critical customers, devastated [Plaintiff's] ability to compete, and allowed Carter Lumber to immediately establish an expanded and more prominent presence in the Carolinas . . . ." (*Id.* ¶ 41.) The Court recognizes that these types of allegations, made for the most part "upon information and belief" and using inflammatory language, are easily concocted, particularly in the immediate aftermath of a competitor's soliciting away Plaintiff's key employees and customers. The allegations also appear to be intended to mirror those in *Sunbelt Rentals, Inc. v. Head & Engquist Equipment, LLC*, 2003 NCBC LEXIS 6 (N.C. Super. Ct. 2003), *aff'd*, 174 N.C. App. 49, 620 S.E.2d 222 (2005).[2] Nevertheless, viewed in the light most favorable to Plaintiff, the allegations could support the notion that Carter Lumber hired Plaintiff's employees for the purpose of injuring Plaintiff or rendering it unable to compete with Carter Lumber, and not simply for legitimate reasons of competition. On these allegations, the Court cannot conclude that Plaintiff is precluded from proving "any set of facts . . . which would entitle him to relief." *Commscope Credit Union v. Butler & Burke, LLP*, 237 N.C. App. 101, 103, 764 S.E.2d 642, 646 (2014). Accordingly, Defendants' Motion regarding Plaintiff's claim for tortious interference with contract (Count Two) should be DENIED.

---

[2] As Chief Judge James L. Gale of this Court recently recognized, "[t]he invocation of Sunbelt Rentals has become a frequent event, although that case depended upon unusual facts that are not often repeated." *RoundPoint Mortg. Co. v. Florez*, 2016 NCBC LEXIS 18, *61 (N.C. Super. Ct. 2016).

### c. Tortious Interference with Prospective Economic Advantage

29. Plaintiff's claim for tortious interference with prospective economic advantage appears to be premised on the loss of potential additional business from its existing customers to Defendants. (Am. Compl. ¶¶ 76–82; Count Three.) Plaintiff alleges that Defendants "induced [Plaintiff]'s customers to cease its (sic) business relationship with [Plaintiff] and to conduct business instead with Carter Lumber," and that "[Plaintiff] reasonably expected that, but for [Defendants'] conduct, its business relationships with its customers would have continued and grown . . . ." (*Id.* ¶¶ 77, 79.) Plaintiff does not identify any specific potential contract with which Defendants interfered, nor any particular customer which ceased doing business with Plaintiff because of Defendants' actions.

30. "In order to state a claim for wrongful interference with prospective advantage, the plaintiffs must allege facts to show that the defendants acted without justification in inducing a third party to refrain from entering into a contract with them which would have ensued but for the interference." *Radcliffe*, 2016 N.C. App. LEXIS 824 at *46, 789 S.E.2d 893 (citing *Walker v. Sloan*, 137 N.C. App. 387, 393, 529 S.E.2d 236, 242 (2000); *Gupton v. Son-Lan Dev. Co.*, 205 N.C. App. 133, 142–43, 695 S.E.2d 763, 770 (2010) (same). Defendants argue that the Complaint does not state a claim for tortious interference with prospective economic advantage because "Plaintiff identifies no particular customer nor any particular opportunity it claims to have lost," and refers only to "unnamed customers it 'reasonably expected' would have 'continued and grown.'" (Defs.' Br. Supp. Mot. Dismiss 7.) Defendants also argue

that Plaintiff has not alleged that Defendants acted without justification on the same grounds underlying their argument regarding the claim for tortious interference with contract. (*Id.* at 7–8.) For the same reasons that Plaintiff's allegations could support a lack of justification in the claim for interference with contract, the Court concludes that Plaintiff has sufficiently alleged a lack of justification for tortious interference with prospective economic advantage, and Defendants' argument fails at this stage of the case.

31.     Here, Plaintiff inarguably knows the identities of the customers who Defendants solicited to cease doing business with Plaintiff, but does not allege these customers with particularity. Even more significantly, however, Plaintiff does not allege that that Defendants interfered in the formation of *a contract* at all. Nevertheless, Plaintiff argues that it need only point to "evidence that a defendant interfered with a trade or business by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference." (Pl.'s Br. Opp. Mot. Dismiss 11.)

32.     North Carolina law on the question of whether a plaintiff must identify specific contracts or business opportunities to support a claim for tortious interference with economic advantage is not crystal clear. There is Supreme Court precedent supporting the position that a plaintiff needs only to allege that it had a reasonable expectation of a continued business relationship with its customer and that the defendant wrongfully interfered with the relationship. *Owens v. Pepsi Cola Bottling Co.*, 330 N.C. 666, 680, 412 S.E.2d 636, 644–45 (1992) (holding that the

evidence was sufficient to support a claim for tortious interference with prospective economic advantage where it showed the plaintiff "had a valid business relationship with several customers," "had a reasonable expectation of continuing to do business with these customers," and "that defendant was aware of these relationships and intervened to destroy them"). There also is precedent supporting the position that a plaintiff must identify a specific lost contract or opportunity to support such a claim. *Dalton v. Camp*, 353 N.C. 647, 655, 548 S.E.2d 704, 710 (2001) (holding that trial court properly granted summary judgment where evidence showed that despite the fact that plaintiff had "an expectation of a continuing business relationship with [the customer], at least in the short term, he offers no evidence showing that but for [the defendant]'s alleged interference a contract would have ensued").

33.    This Court's holdings on the issue of whether identification of specific contracts is required for a claim of interference with prospective advantage also are split. *Compare Velocity Solutions, Inc. v. BSG Fin.*, 2016 NCBC LEXIS 19, *13 (N.C. Super. Ct. 2016) ("the North Carolina Supreme Court has rejected the notion that a claim for tortious interference with prospective economic advantage requires evidence of a specific contractual opportunity . . . .") (citing *Owens*, 330 N.C. at 680–81, 412 S.E.2d at 644–45), *with Artistic S. Inc. v. Lund*, 2015 NCBC LEXIS 113, *31–32 (N.C. Super. Ct. 2015) ("Here, Plaintiff has not identified a specific potential contract that the Vision Defendants intentionally induced a third party not to enter with Plaintiff. As a result, the Court concludes that Plaintiff's claim for tortious interference with prospective economic advantage should be dismissed."); *Aecom*

*Tech. Corp. v. Keating*, 2012 NCBC LEXIS 9, \*13–14 (N.C. Super. Ct. 2012) ("Plaintiffs fail to allege that Defendants actually interfered with existing or prospective contracts, and Plaintiffs do not identify any specific contracts or customers that were lost. Without such allegations in the Complaint, Plaintiffs have failed to state a valid claim for tortious interference."); *Sports Quest, Inc. v. Dale Earnhardt, Inc.*, 2004 NCBC LEXIS 10, \*14 (N.C. Super. Ct. 2004) ("Plaintiff, however, fails to identify future contracts with any specificity. Sports Quest's expectation of future contracts with current customers does not suffice to maintain a tortious interference with prospective advantage claim.").

34. The Supreme Court's recent decision in *Bev. Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC*, 368 N.C. 693, 701–02, 784 S.E.2d 457, 463 (2016) provides additional guidance on this question. In *Beverage Systems*, the trial court granted summary judgment to the defendant on the plaintiff's claim for tortious interference with prospective economic advantage. The Court of Appeals reversed the grant of summary judgment, finding that "plaintiff alleged that third-party customers switched their business to defendants instead of continuing their business relationships with plaintiff" and that "there is a genuine issue of fact whether customers refrained from entering into contracts or continuing previous implied contracts with plaintiff but for defendants' unjustified interference." *Bev. Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC*, 235 N.C. App. 438, 450, 762 S.E.2d 316, 324 (2014), *rev'd in part*, 368 N.C. 693, 784 S.E.2d 457 (2016). The Supreme Court reversed the Court of Appeals, however, concluding that although

"defendants . . . 'purposely and intentionally interfered with the contracts and agreements of Beverage Systems with the intent to steal the customers away from Beverage Systems' … plaintiff has not demonstrated that any contract would have ensued but for defendants' conduct, nor has plaintiff identified a particular business with which it lost an economic advantage." 368 N.C. at 701, 784 S.E.2d at 463. The Court held that "an expectation" of a continued customer relationship was "insufficient to support a claim for either tortious interference with contract or tortious interference with prospective economic advantage." *Id.* at 701–02, 784 S.E.2d at 463 (citing *Dalton*, 353 N.C. at 655, 548 S.E.2d at 710).

35. Although the pleading burden on a plaintiff is a light one, the Court must conclude that Plaintiff here has failed to allege sufficient facts to support its claim for tortious interference with prospective economic advantage. Plaintiff alleges only that it "reasonably expected that, but for [Defendants'] conduct, its business relationships with its customers would have continued and grown." The Complaint does not identify any particular prospective contracts with which Defendants interfered, nor does it expressly allege that any contract would have ensued. Plaintiff also does not identify any of the specific customers with whom Defendants allegedly have interfered, the nature or length of Plaintiff's relationships with such customers, nor other facts supporting the grounds for its expectation of a continuing relationship with the customer. Nevertheless, the Court acknowledges that the pleading burden regarding the identification of specific contracts or business opportunities is less than clear, and believes that Plaintiff should be given the opportunity to attempt to plead

additional, more specific, facts in support of the claim if it so chooses. Accordingly, Defendants' Motion regarding Plaintiff's claim for tortious interference with prospective economic advantage (Count Three) should be GRANTED, and the claim dismissed WITHOUT PREJUDICE.

### d. Unfair and Deceptive Trade Practices Claim (against Carter Lumber)

36. To state a valid UDTP claim, a plaintiff must allege: "(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." *Combs & Assocs. v. Kennedy,* 147 N.C. App. 362, 373–74, 555 S.E.2d 634, 642 (2001). North Carolina courts "have long recognized that claims for misappropriation of trade secrets and tortious interference with contract may form the basis of a UDTP claim . . . ." *S. Fastening*, 2015 NCBC LEXIS 42 at *28 (N.C. Super. Ct. 2015) (citing *Drouillard v. Keister Williams Newspaper Servs., Inc.*, 108 N.C. App. 169, 172–73, 423 S.E.2d 324, 326–27; *Kuykendall*, 322 N.C. at 665, 370 S.E.2d at 389). Having found that Plaintiff's misappropriation and tortious interference claims should survive Defendants' Motion, the Court believes that Plaintiff has alleged sufficient facts for its UDTP claim to survive Defendants' Motion as well. *Veer Right Mgmt. Group, Inc. v. Czarnowski Display Serv.*, 2015 NCBC LEXIS 13, *17–18 (2015). Therefore, Defendants' Motion regarding Plaintiff's claim for unfair and deceptive trade practices in violation of G.S. § 75-1.1 (Count Four) should be DENIED.

THEREFORE, IT IS ORDERED that:

37. Defendants' Motion as to Plaintiff's claims for misappropriation of trade secrets in violation of the TSPA (Count One) is DENIED.

38. Defendants' Motion as to Plaintiff's claim for tortious interference with contract (Count Two) is DENIED.

39. Defendants' Motion as to Plaintiff's claim for tortious interference with prospective economic advantage (Count Three) is GRANTED, and the claim is dismissed WITHOUT PREJUDICE.

40. Defendants' Motion as to Plaintiff's claim for unfair and deceptive trade practices in violation of G.S. § 75-1.1 (Count Four) is DENIED.

This the 21st day of October, 2016

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases