BEROTH OIL COMPANY, a North Carolina Corporation, Plaintiff v. WILLIAM H. WHITEHEART d/b/a WHITEHEART OUTDOOR ADVERTISING COMPANY, Defendant

AMERICAN ADVERTISING CONSULTANTS, INC. and SKYAD, LLC and DARLENE JOY PAYNE, Plaintiffs v. WILLIAM H. WHITEHEART d/b/a WHITEHEART OUTDOOR ADVERTISING COMPANY, Defendant

No. COA03-1608

(Filed 6 September 2005)

**1. Unfair Trade Practices— disputed billboard lease—damages**

The trial court did not err by denying defendant's motion for a new trial on plaintiffs' unfair and deceptive trade practices claims arising from a disputed billboard lease. Although defendant argued that plaintiffs' damages were overly speculative and

BEROTH OIL CO. v. WHITEHEART

[173 N.C. App. 89 (2005)]

not supported by adequate evidence, the evidence was sufficient to allow the jury to calculate damages to a reasonable certainty and the jury's awards do not amount to a substantial miscarriage of justice.

**2. Unfair Trade Practices— attorney fees—sufficiency of evidence**

The evidence was sufficient and there was no abuse of discretion in an award of attorney fees in an action for unfair and deceptive trade practices arising from a disputed billboard lease.

**3. Unfair Trade Practices— disputed billboard lease—sufficiency of evidence—new trial denied**

There was no abuse of discretion in not granting a new trial on an unfair and deceptive practices claim arising from a disputed billboard lease. The jury found deliberate deception, delay, and interference with attempts to lease the property to a successor.

**4. Civil Procedure— request for jury instructions— requirements**

The trial court did not abuse its discretion by denying defendant's request for additional language in the jury charge in an action rising from a disputed billboard lease. Defendant did not comply with the requirements of N.C.G.S. § 1A-1, Rule 51(b) in making the request; moreover, the jury resolved the disputed issue in its verdicts.

**5. Malicious Prosecution and Abuse of Process— disputed billboard lease—sufficiency of evidence**

There was sufficient evidence to support claims of malicious prosecution and abuse of process in an action arising from a disputed billboard lease.

**6. Libel and Slander— disputed billboard lease—sufficiency of evidence**

There was sufficient evidence to support a jury verdict for libel in an action arising from a disputed billboard lease.

Appeal by defendant from judgments entered 18 February 2003 by Judge Ronald E. Spivey in Forsyth County Superior Court. Heard in the Court of Appeals 21 March 2005.

**BEROTH OIL CO. v. WHITEHEART**

[173 N.C. App. 89 (2005)]

*Hendrick & Bryant, LLP, by Matthew H. Bryant and Timothy Nerhood, for plaintiff-appellees.*

*David E. Shives, PLLC, by David E. Shives, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant appeals from judgments of the trial court entered upon jury verdicts finding him liable for slander of title, unfair trade practices, malicious prosecution, abuse of process, libel *per se* and punitive damages, and awarding plaintiff Beroth Oil Company $213,500.00 in damages and plaintiffs American Advertising Consultants, Inc., SkyAd, LLC, and Darlene Joy Payne $450,000.00 in damages. Defendant also appeals from orders of the trial court denying his motions for judgment notwithstanding the verdict, new trial and remittitur. We find no error.

On 20 December 2001, plaintiff Beroth Oil Company ("Beroth") filed a complaint in Forsyth County Superior Court alleging claims against defendant for slander of title, unfair and deceptive practices, and unjust enrichment. Beroth later amended its complaint to allege a claim of illegal restraint of trade. In its complaint, Beroth alleged, in pertinent part: Beroth owned real property ("the property") in Statesville, North Carolina, which defendant leased for purposes of maintaining a billboard. Beroth stated defendant had failed to pay his yearly $2,000.00 rent for the property for the 1998-99 and 1999-2000 periods. Although defendant received late notices from Beroth, he made no payment as demanded.

In July of 2000, plaintiff Darlene Payne ("Payne") approached Beroth and offered to lease the property for an annual amount of $9,000.00 for twelve years. Beroth and Payne subsequently entered into a lease for the property. Acting as Beroth's agent, Payne sent a letter to defendant informing him of the new lease on the property and demanding that defendant remove his billboard.

On or about 25 July 2000, defendant tendered the past due payment of $2,000.00 for the 1999-2000 period. Defendant also sent Beroth a proposed written lease, offering to renew the lease for $2,000.00 annual rent for a term of July 1999 until July 2009. With the proposed lease, defendant sent a check for $2,000.00 for the 2000-2001 term.

In August of 2000, defendant met with Payne to discuss the possible sale of the billboard to her. Negotiations to sell the billboard to Payne continued for several months, but were ultimately unsuccessful. Beroth sent a letter to defendant in November of 2000 informing him he had no lease on the property. Defendant responded in a letter acknowledging there was no agreement to lease the property to him, there was competition for leasing the property, and that negotiations were ongoing.

On 5 February 2001, Beroth notified defendant that it rejected his lease offer and returned the proffered $2,000.00 check for the 2000-2001 term. Beroth informed defendant he had thirty days to quit the property and remove his fixtures. On 13 February 2001, defendant informed Beroth that he would remove or sell the billboard, and he affirmed he was not stalling or circumventing the issue of the billboard's removal. Defendant, however, failed to remove the billboard.

Over the next several months, Beroth repeatedly demanded the immediate removal of defendant's billboard. Defendant continued to indicate that he would remove the billboard, but that he needed more time to do so. Meanwhile in April 2001, unknown to Beroth and Payne, defendant renewed his annual sign permit for the property from the North Carolina Department of Transportation ("NCDOT") for the years 2001-2002. In his renewal application of April 2001, defendant falsely asserted he had Beroth's permission and consent to maintain the billboard on the property. Defendant's City of Statesville sign permit had been rescinded in March of 2001.

Defendant agreed to remove his billboard from the property by 30 April 2001 and no later than 11 May 2001. Instead of removing the billboard, however, defendant filed for and obtained a temporary restraining order in Iredell County Superior Court on 4 May 2001 in order to (1) prevent Beroth and others from obtaining a sign permit on the property; (2) prevent Beroth and others from contesting defendant's sign permit on adjoining property; (3) prevent Beroth from leasing the property to Payne; and (4) allow defendant to remain on the property. Defendant also filed a complaint against Beroth and others, including Payne, for conspiracy and tortious interference with contract.

On or about 7 May 2001, defendant submitted a second renewal application to NCDOT. On 14 May 2001 the trial court denied defendant's motion to convert his temporary restraining order to a preliminary injunction. Following the 14 May 2001 hearing, Payne applied for

and was denied a NCDOT permit for a billboard on the property because defendant already held the permit for the property, although he had no city permit. The NCDOT refused to act on defendant's misrepresentation on the permit application due to ongoing litigation in the Iredell County civil proceeding. As a result, Beroth was unable to receive any rental income from the property. Moreover, Beroth incurred expenses in contesting defendant's permit with the NCDOT and in the Iredell County civil action.

Defendant removed his billboard from the property on 4 June 2001. He also voluntarily dismissed the Iredell County civil action on 12 October 2001.

Plaintiff Payne and her company SkyAd, LLC ("SkyAd"), along with American Advertising Consultants, Inc. ("AAC"), in which Payne maintained fifty-percent ownership, also filed a complaint against defendant on 20 December 2001. The complaint contained substantially the same allegations as that filed by Beroth, with the following pertinent additions: according to the complaint, defendant made defamatory statements about Payne and her companies to third persons, calling her a "lease jumper," a term with extremely negative connotations in the billboard industry, and a "billboard whore." Defendant also published to members of the outdoor sign industry a 26 March 2001 letter in which he stated that Payne's actions were unprofessional, unethical and despicable. He also called Payne a "bitch" and sent a facsimile to persons in the outdoor advertising industry "alerting" them to potential "lease-jumping" by Payne. Payne alleged she incurred damages as a result of defendant's defamatory statements, her inability to erect a sign on the site and obtain the NCDOT permit, and in defending the Iredell County civil action. The complaint set forth claims against defendant for malicious prosecution of civil action, abuse of process, libel and slander per se and per quod, and unfair and deceptive practices.

The cases were consolidated for trial. Plaintiffs presented evidence in support of their claims. Defendant did not testify, nor did he present evidence. At the close of the evidence, the trial court denied defendant's motions for directed verdict.

The jury returned verdicts against defendant and awarded Beroth the following damages: $1.00 for slander of title; $70,500.00 for unfair and deceptive practices; and $2,000.00 for unjust enrichment. The jury found defendant not liable for punitive damages as to Beroth. The jury awarded Payne, SkyAd and AAC the following: $16,766.00

for malicious prosecution; $1.00 for abuse of process; $1.00 for libel; and $150,000.00 for unfair and deceptive practices. The jury also awarded $100,000.00 in punitive damages. The trial court subsequently trebled the damages for the unfair and deceptive practices verdicts and entered judgment in favor of Beroth in the amount of $213,500.00 and in favor of Payne, SkyAd and AAC in the amount of $450,000.01. The trial court awarded attorneys' fees to plaintiffs as prevailing parties. N.C. Gen. Stat. § 75-16.1 (2003). The trial court denied defendant's motions for judgment notwithstanding the verdict and new trial. Defendant appeals.

Defendant argues the trial court abused its discretion in denying his motion for a new trial on the unfair and deceptive practices claim in that plaintiffs presented (1) insufficient evidence of damages and (2) insufficient evidence that defendant committed unfair and deceptive practices. Defendant further contends the trial court erred in (3) denying his requested jury instructions and (4) denying his motion for judgment notwithstanding the verdict and new trial on the malicious prosecution, abuse of process, and libel claims. We conclude there was no error in the trial.

[1] Defendant first argues the trial court erred in denying his motion for a new trial on plaintiffs' unfair and deceptive practices claims. Defendant contends plaintiffs presented insufficient evidence of damages to support the jury verdicts, and that plaintiffs AAC, SkyAd and Payne offered insufficient evidence to support an award of attorneys' fees. Defendant maintains that a new trial is required. We reject his arguments.

It is well established that an appellate court's review of a trial court's discretionary ruling denying a motion to set aside a verdict and order a new trial is "strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum and Cogdell v. Bynum*, 305 N.C. 478, 482, 290 S.E. 2d 599, 602 (1982); *Goldston v. Chambers*, 272 N.C. 53, 59, 157 S.E. 2d 676, 680 (1967). Our Supreme Court has cautioned that

the trial judges of this state have traditionally exercised their discretionary power to grant a new trial in civil cases quite sparingly in proper deference to the finality and sanctity of the jury's findings. We believe that our appellate courts should place great faith and confidence in the ability of our trial judges to make the right decision, fairly and without partiality, regarding the necessity for

a new trial. Due to their active participation in the trial, their first-hand acquaintance with the evidence presented, their observances of the parties, the witnesses, the jurors and the attorneys involved, and their knowledge of various other attendant circumstances, presiding judges have the superior advantage in best determining what justice requires in a certain case. Because of this, we find much wisdom in the remark made many years ago by Justice Livingston of the United States Supreme Court that "there would be more danger of injury in revising matters of this kind than what might result now and then from an arbitrary or improper exercise of this discretion." *Insurance Co. v. Hodgson,* 10 U.S. (6 Cranch) 206, 218 (1810). Consequently, an appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice.

*Worthington,* 305 N.C. at 487, 290 S.E.2d at 605.

Defendant argues that the damages plaintiffs incurred were overly speculative and not supported by adequate evidence at trial. The party seeking damages bears the burden of proving them in a manner that allows the fact-finder to calculate the amount of damages to a reasonable certainty. *Olivetti Corp. v. Ames Business Systems, Inc.,* 319 N.C. 534, 547-48, 356 S.E.2d 578, 586 (1987). "However, a party seeking recovery for losses occasioned by another's breach of contract need not prove the amount of his prospective damages with absolute certainty; a reasonable showing will suffice." *Pipkin v. Thomas & Hill, Inc.,* 298 N.C. 278, 287, 258 S.E.2d 778, 785 (1979); *see also Whiteside Estates, Inc. v. Highlands Cove, L.L.C.,* 146 N.C. App. 449, 462, 553 S.E.2d 431, 440 (2001) (noting that while the claiming party must present relevant data providing a basis for a reasonable estimate, proof to an absolute mathematical certainty is not required), *disc. review denied,* 356 N.C. 315, 571 S.E.2d 220 (2002). " 'Substantial damages may be recovered though plaintiff can only give his loss proximately.' " *Pipkin,* 298 N.C. at 287, 258 S.E.2d at 785 (quoting *Wilkinson v. Dunbar,* 149 N.C. 20, 22, 23, 62 S.E. 748 (1908)). Any challenges to the quality of the data upon which an expert witness based his opinion go to the weight to be accorded that opinion and not its admissibility. *State Properties, LLC v. Ray,* 155 N.C. App. 65, 76, 574 S.E.2d 180, 188 (2002). "Moreover, there is no bright-line rule in determining what amount of evidence is sufficient to establish lost profits." *Byrd's Lawn & Landscaping, Inc. v. Smith,* 142 N.C. App. 371, 377-78, 542 S.E.2d 689, 693 (2001).

Here, plaintiff Payne presented evidence that the permitted sign was worth between $250,000.00 and $275,000.00. Payne testified that defendant himself valued the sign at $275,000.00. According to Payne, the cost of erecting a sign on the site was approximately $25,000.00. In addition, she stated she received lease revenue of twelve hundred dollars per month from a one-sided sign across the street from the disputed two-sided site. Based on the gross advertisement revenue less expenses, Payne estimated her lost advertisement revenue as $34,800.00 for the total twenty-two month time period between February of 2001, the point at which Payne could have erected a sign but for defendant's actions, and the time of trial. Payne testified she continued in her attempts to obtain the necessary NCDOT permit, but had been unsuccessful. Defendant continued to hold the permit at the time of trial. The jury valued Payne's loss at $150,000.00 for the unfair trade practices claim.

Darrell Sayles, the chief financial officer for Beroth and a certified public accountant, testified as an expert in present value calculations. Sayles testified that, using the United States Treasury standard rate of interest of three percent, he calculated the present value of Beroth's twelve-year lease with Payne at $92,274.00. Sayles stated that the Treasury rate was the "more commonly used rate" of interest, but for comparison purposes, Sayles also performed a calculation using the Bank of America CD rate of 1.45%, with a resulting present value of $99,902.00. The jury ultimately awarded Beroth $70,500.00 on its unfair trade practices claim.

Defendant made no objection to Payne's or Sayles' damages testimony at trial, nor did he introduce any conflicting evidence as to valuation. The jury awarded both Payne and Beroth substantially less than the amount of damages they claimed to have incurred. We conclude that plaintiffs presented sufficient evidence to allow the jury to calculate the damages to a reasonable certainty, and that the jury's awards in this case do not amount to a "substantial miscarriage of justice." See *Byrd's Lawn & Landscaping, Inc.*, 142 N.C. App. at 378, 542 S.E.2d at 694 (holding that, where the plaintiff offered evidence to show the gross revenues which would have been realized upon certain contracts, and the profit margins which the plaintiff would have realized on those revenues, the evidence established a sufficient basis for the jury to calculate the amount of those profits with reasonable certainty).

**BEROTH OIL CO. v. WHITEHEART**

[173 N.C. App. 89 (2005)]

We conclude the trial court did not abuse its discretion in denying defendant's motion for a new trial on the unfair and deceptive practices claim. We overrule this assignment of error.

[2] We also reject defendant's argument that AAC, SkyAd and Payne presented insufficient evidence of the attorneys' fees they incurred as a result of the dispute with defendant. Payne testified she incurred attorneys' fees of $16,765.79 in defense of the Iredell County civil action, and she presented documents in support of her testimony. Payne's attorneys submitted detailed documents and affidavits of their work on the case. The trial court awarded attorneys' fees of $3,227.29. We discern no abuse of discretion. By further assignment of error, defendant contends plaintiffs presented insufficient evidence that he committed unfair and deceptive practices, and that the trial court should have granted a new trial. Again, we find no abuse of discretion by the trial court.

[3] "Chapter 75 of our General Statutes prohibits unfair acts which undermine ethical standards and good faith between persons engaged in business dealings." *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 657, 464 S.E.2d 47, 54 (1995). To establish a *prima facie* claim for unfair and deceptive practices under N.C. Gen. Stat. § 75-1.1, the plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. *Id.*; N.C. Gen. Stat. § 75-1.1(a) (2003).

In response to special interrogatories submitted to it, the jury in the instant case found that (1) defendant told Beroth that he would timely vacate the property when in fact he had no intention to vacate the property at the time he made the statement; (2) defendant filed a complaint in Iredell County alleging he had a valid lease on the property; (3) defendant filed the complaint and obtained a temporary restraining order for the purposes of interfering with or delaying Beroth from negotiating a lease with Payne and her companies; (4) defendant's conduct was in or affected commerce; and (5) defendant's conduct was the proximate cause of plaintiff Beroth's injury. The jury made substantially the same findings as to plaintiff Payne and her companies.

Defendant argues that malicious prosecution and abuse of process do not constitute unfair or deceptive practices. Even assuming that were true, defendant's conduct rises above mere abuse of process and malicious prosecution. The jury found that defendant

deliberately deceived Beroth and Payne as to his intent to vacate the property and remove his sign. Defendant remained on the property, delaying and ultimately preventing Payne from securing a permit for the site. Defendant filed his civil action for the express purpose of further delaying the lease negotiations between Beroth and Payne. As a result, Payne was unable to occupy the property and failed to obtain the necessary permit for the site. At the time of the trial, defendant retained the permit for the site, although he had no lease for the property and no city permit for the site. We conclude the evidence and the jury findings support the award for unfair and deceptive practices in this case. The trial court did not abuse its discretion in denying defendant's motion for a new trial on the unfair practices claim.

[4] By further assignment of error, defendant argues the trial court erred by denying his request for additional language in the jury charge. The special interrogatory submitted to the jury reads as follows: "Did the Defendant file a Complaint in Iredell County alleging that the Defendant had a valid lease on the property?" At trial, defendant orally requested the addition of "at a time when he had no basis to believe this" to the end of the special interrogatory. Defendant contends the issue of whether the Iredell civil action was baseless was a question of fact for the jury, and that the requested instruction would have properly resolved the matter. Defendant argues the trial court therefore erred in denying the oral request.

Rule 51(b) of the North Carolina Rules of Civil Procedure requires that a request for special instructions be in writing, signed by counsel, and submitted to the court before the court instructs the jury. N.C. Gen. Stat. § 1A-1, Rule 51(b) (2003). Because defendant did not comply with the requirements of Rule 51(b), the trial court acted properly within its discretion in denying the request. *Byrd's Lawn & Landscaping, Inc.*, 142 N.C. App. at 378-79, 542 S.E.2d at 694; N.C. Gen. Stat. § 1A-1, Rule 51(b) (2003). Moreover, we agree with plaintiffs that the jury did in fact resolve the matter of whether the Iredell County civil action was baseless when it returned verdicts against defendant in the malicious prosecution and abuse of process claims. We overrule this assignment of error.

[5] Finally, defendant argues the trial court erred by denying his motion for directed verdict, entering judgment on, and denying his motions for judgment notwithstanding the verdict and new trial on the claims of malicious prosecution, abuse of process, and libel. Defendant contends there was insufficient evidence to support these claims.

**BEROTH OIL CO. v. WHITEHEART**

[173 N.C. App. 89 (2005)]

Upon a defendant's motion for directed verdict, the trial court must determine whether the plaintiff's evidence is sufficient " 'to take the case to the jury and support a verdict for the plaintiff.' " *Byrd's Lawn & Landscaping, Inc.*, 142 N.C. App. at 374 542 S.E.2d at 691 (quoting *Manganello v. Permastone, Inc.*, 291 N.C. 666, 670, 231 S.E.2d 678, 680 (1977)). The plaintiff's evidence " 'must be taken as true and all the evidence must be considered in the light most favorable to the plaintiff, giving him the benefit of every reasonable inference to be drawn therefrom.' " *Id.* The motion should be denied unless as a matter of law it appears that the plaintiff is not entitled to recover under any view of the evidence. *Id.* "A motion for judgment notwithstanding the verdict is essentially a renewal of an earlier motion for directed verdict and presents the same question." *Id.* We therefore examine the evidence in the instant case to determine whether plaintiffs presented sufficient evidence on the claims of malicious prosecution, abuse of process, and libel.

The essential elements for a malicious prosecution claim are: (1) the defendant initiated the earlier proceeding; (2) malice on the part of the defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff. *Best v. Duke University*, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994). In an action for malicious prosecution, the malice element may be satisfied by a showing of either actual or implied malice. *Best v. Duke University*, 112 N.C. App. 548, 553, 436 S.E.2d 395, 399 (1993), *aff'd in part, rev'd in part on other grounds*, 337 N.C. 742, 448 S.E.2d 506 (1994). Actual malice includes " 'ill-will, spite, or desire for revenge, or under circumstances of insult, rudeness or oppression, or in a manner evidencing a reckless and wanton disregard of rights.' " *Moore v. City of Creedmoor*, 120 N.C. App. 27, 43, 460 S.E.2d 899, 909 (1995) (quoting *Williams v. Kuppenheimer Manufacturing Co.*, 105 N.C. App. 198, 202-03, 412 S.E.2d 897, 901 (1992), *aff'd in part, rev'd in part on other grounds*, 345 N.C. 356, 481 S.E.2d 14 (1997). Implied malice, however, may be inferred from want of probable cause in reckless disregard of the plaintiff's rights. *Id.* at 44, 460 S.E.2d at 909. Want of probable cause may not be inferred from malice for purposes of determining whether there is a cause of action for malicious prosecution but malice may be inferred from want of probable cause. *Cook v. Lanier*, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966).

The essential elements of abuse of process are: (1) the existence of an ulterior purpose; and (2) an act in the use of the process not

proper in the regular prosecution of the proceeding. *Barnette v. Woody*, 242 N.C. 424, 431, 88 S.E.2d 223, 227-28 (1955). " '[A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ.' " *Stanback v. Stanback*, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979) (quoting *Fowle v. Fowle*, 263 N.C. 724, 728, 140 S.E.2d 398, 401 (1965)).

Defendant contends there was no evidence of any ulterior purpose or that he committed any improper act in the use of the legal process. Defendant asserts that his purpose throughout was "to protect his own interests," and that there was no evidence of any malice on his part. We disagree.

Plaintiffs here presented evidence that defendant did not have a lease with Beroth yet continued to occupy the property, and that defendant filed the Iredell County civil action while simultaneously assuring Beroth and Payne he intended to vacate the property. Defendant falsely asserted on his NCDOT application that he had Beroth's consent to remain on the site. Defendant's action in renewing the permit and in filing the Iredell County suit prevented Payne from obtaining the permit. Defendant had no city permit for the site, however, nor did he have permission to remain on the property. Defendant presented no evidence at trial to contradict plaintiffs' presentation of the facts. From this evidence, the jury could properly conclude that defendant's action in filing the Iredell County civil action was motivated by malice towards plaintiffs rather than any genuine concern over his legal rights. We also note the trial court found defendant's civil action to be "a sham." We overrule this assignment of error.

[6] Finally, we conclude there was sufficient evidence to support the jury verdict for libel. Actionable libel includes the publication of written statements to third persons which tend to impeach a person in that person's trade or profession or to subject one to ridicule, contempt or disgrace. *Renwick v. News and Observer and Renwick v. Greensboro News*, 310 N.C. 312, 317, 312 S.E.2d 405, 409 (1984). Plaintiffs presented evidence that defendant made defamatory written statements about Payne and her companies to third persons, calling her a "lease jumper," "bitch" and "billboard whore." Defendant also published to members of the outdoor sign industry a 26 March 2001 letter in which he stated that Payne's actions were unprofes-

sional, unethical and despicable. The trial court did not err in denying defendant's motion for directed verdict on these claims.

In the judgments of the trial court, we find no error.

No error.

· Judges HUDSON and JACKSON concur.