**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1493**

DANIELLE GORE SPIVEY,

        Plaintiff – Appellant,

   v.

KEVIN NORRIS; WESTERN SURETY CO.,

        Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Terrence W. Boyle, District Judge. (7:15-cv-00160-BO)

Argued: February 28, 2018                      Decided: April 12, 2018

Before DUNCAN, AGEE and WYNN, Circuit Judges.

Affirmed by unpublished opinion. Judge Duncan wrote the opinion in which Judge Agee and Judge Wynn joined.

Randolph Michael James, RANDOLPH M. JAMES, PC, Winston-Salem, North Carolina, for Appellant. Bradley O. Wood, WOMBLE BOND DICKINSON (US) LLP, Winston-Salem, North Carolina; Norwood Pitt Blanchard, III, CROSSLEY MCINTOSH COLLIER HANLEY & EDES PLLC, Wilmington, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Danielle Spivey appeals the district court's grant of summary judgment in favor of defendants, Detective Kevin Norris and Sheriff Lewis Hatcher of the Columbus County, North Carolina Sheriff's Office, and Western Surety Company (surety of the Columbus County Sheriff) for several claims arising from both her arrest for allegedly filling a forged prescription and from her husband's driving citation. Norris is married to a close friend of Spivey's mother. Spivey alleges that Norris had a personal vendetta against her, which led him to pursue an investigation against her and try to break up her marriage. For the reasons that follow, we affirm the district court's grant of summary judgment on all of Spivey's claims.

I.

Danielle Spivey visited dentist Dr. Brent Lawson on August 17, 2012, to address swelling that followed root canal surgery. On that day, Lawson prescribed Spivey penicillin and Percocet, a narcotic pain medication. Spivey returned to Lawson's office on August 20, 2012, for a tooth extraction, and Lawson gave her another Percocet prescription.

Shortly thereafter, Detective Kevin Norris received information that Spivey tried to fill a prescription for narcotic pain medication at a CVS in Loris County, South Carolina that the pharmacist could not verify as legitimate, and that she "caus[ed] a ruckus because she couldn't get prescription pills." J.A. 360. He also learned that Spivey might have passed a forged prescription at a pharmacy in Whiteville, North

Carolina. Because of Norris's relationship to Spivey's mother, he asked Agent Cecil Cherry of the North Carolina State Bureau of Investigation ("SBI") Drug Diversion Unit to direct the investigation. Although Cherry led the ensuing investigation, Norris continued to participate in it. Cherry examined the prescription dated August 17, 2012, and filled in Whiteville, North Carolina, and believed it to have been altered to change the amount from twenty Percocet tablets to thirty.

Although on November 6, 2012, Cherry and Norris questioned Lawson on the discrepancy, the witnesses dispute what Lawson said at the meeting. According to Cherry, Lawson told Cherry and Norris that his records reflected that he prescribed twenty tablets of Percocet to Spivey. According to Cherry, Lawson said that he would not write thirty tablets on the prescription and then write twenty tablets in Spivey's chart. Lawson maintained that he never wrote prescriptions for thirty tablets; he usually writes Percocet prescriptions for twenty tablets or fewer. Cherry also stated in his deposition that Lawson never told him that the prescription contained an error. Cherry stated in his deposition that his investigation notes reflect his account of the meeting and indicate that he spoke to Lawson again on November 29, 2012, about his general procedures for prescribing medication.

During the course of discovery in the instant suit, Dr. Lawson stated in his deposition that the prescription for thirty tablets was in his handwriting, that Norris and Cherry had not shown him the prescription, and that if he had seen the prescription he would have told them that. Lawson also stated that he did not have a hard rule against prescribing thirty tablets and that the discrepancy was probably a mistake on his part.

3

On November 7, 2012, Cherry and Norris accompanied an agent from the South Carolina Department of Health and Environmental Control to interview Spivey at her workplace. Spivey denied altering the prescription, but admitted that her husband frequently took her Percocet pills without her permission and that she therefore hid them from him.

While on patrol the next day, Norris observed a car nearly strike a bridge and stopped the vehicle. Spivey's husband was driving. Norris noticed the smell of alcohol on Mr. Spivey's breath and called the department's traffic team. Another officer completed the stop and transported Mr. Spivey to the county jail where his blood alcohol level was tested. As a result, Mr. Spivey received a citation for driving while impaired, which was later dismissed.

On November 19, 2012, Lawson was directed to provide Spivey's medical records to the Columbia County Sheriff's Office. Later that month Cherry and Norris met with Assistant District Attorney Heath Nance. Nance concluded that there was probable cause to arrest Spivey. Shortly after their meeting, Cherry sought a warrant for Spivey's arrest from a magistrate judge. The magistrate judge agreed that Cherry had established probable cause and issued an arrest warrant for Spivey for unlawfully obtaining possession of more than fourteen but less than twenty-eight grams of opiates in violation of N.C. Gen. Stat. § 90-95(h)(4) and unlawfully obtaining possession of Percocet by altering a prescription in violation of N.C. Gen. Stat. § 90-108(a)(10). Later that day, Cherry called Spivey to inform her of the outstanding warrants for her arrest and Spivey surrendered at a police station.

4

Spivey entered an *Alford* plea[1] to a reduced misdemeanor charge of possession of a Schedule II controlled substance. Spivey believed that the *Alford* plea would allow her to keep her nursing license and expunge her criminal record upon satisfaction of the requirements set forth by N.C. Gen. Stat. § 90-96. The court sentenced Spivey to a term of probation. On February 22, 2013, a dismissal notice of reinstatement was filed dismissing Spivey's misdemeanor simple possession conviction citing her compliance with N.C. Gen Stat. § 90-96. Spivey contends that the court dismissed her conviction as a result of her production of the original prescription. Appellant's Br. at 18.

Spivey brought claims pursuant to 42 U.S.C. § 1983 against Norris in his individual and official capacities for violations of her First, Fourth, and Fourteenth Amendment rights, and for malicious prosecution. She brought state law claims against Norris for malicious prosecution, abuse of process, and intentional and negligent infliction of emotional distress. In support of her Fourth Amendment and state law malicious prosecution claims, she alleges that she was arrested without probable cause. She alleges that Norris violated her First Amendment right to freedom of association and her Fourteenth Amendment right to privacy by pulling over her husband in an attempt to separate the couple. Spivey included Sheriff Hatcher, as Norris's supervisor, in her § 1983 claims under a theory of supervisory liability. She brought a claim against both Norris and Hatcher in their official capacities for negligent infliction of emotional

---

[1] An *Alford* plea allows a criminal defendant to maintain his or her innocence whilst acknowledging that there is sufficient evidence for a conviction. *See North Carolina v. Alford*, 400 U.S. 25 (1970).

distress.  Finally, Spivey brought a claim against Western Surety upon bond under N.C. Gen. Stat. § 58-76-5.

All of the defendants moved for summary judgment on each of the claims.  Spivey opposed the motions.

The district court found that Spivey's arrest warrant was supported by probable cause and thus granted summary judgment on Spivey's § 1983 claims against Norris in his individual capacity, § 1983 supervisory liability claim against Hatcher, and state law malicious prosecution claim.  The district court also granted summary judgment on Spivey's First and Fourteenth Amendment claims finding that she had "failed to proffer any evidence in response to the motion for summary judgment which would create a genuine issue of material fact as to whether Norris interfered with plaintiff's right to privacy, free association, or equal protection of the law when he stopped plaintiff's husband's vehicle on suspicion of drunk driving." *Spivey v. Norris*, No. 7:15-CV-160-BO, 2017 WL 1184103, at *5 (E.D.N.C. Mar. 29, 2017).  The district court found that Norris was entitled to public officer immunity on Spivey's abuse of process claim because "the record reflect[ed] no genuine issue of material fact as to whether the criminal process involving either [Spivey] or her husband, who is not a party to this action, once initiated, involved some act by Norris which was not proper in the regular prosecution of the proceeding." *Id.* at *6.  Next, the district court found that Spivey failed to provide any evidence to support her allegation that her emotional distress was severe as required by North Carolina law and therefore granted summary judgment on Spivey's negligent and intentional infliction of emotional distress claims.  Finally, the

6

district court dismissed Spivey's claim on bond against Western Surety because it had determined that summary judgment in favor of the defendants was proper.

Spivey timely appealed to this court on all claims. On July 17, 2017, the parties filed a joint stipulation dismissing Spivey's § 1983 supervisory liability claim against Hatcher, which we granted on July 18, 2017.

## II.

We review a grant of summary judgment de novo. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "When reviewing a grant of summary judgment, we view all reasonable inferences drawn from the evidence in the light that is most favorable to the non-moving party." *Smith v. Munday*, 848 F.3d 248, 251 (4th Cir. 2017) (internal quotation marks omitted).

Many of Spivey's claims rise and fall with her probable cause argument. Importantly, a Fourth Amendment claim for unreasonable seizure[2] requires the plaintiff to show that "the *defendant* have seized [plaintiff] pursuant to legal process that was not supported by probable cause and that the criminal proceedings [have] terminated in [plaintiff's] favor." *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005) (internal quotation marks omitted). Relatedly, "officers are entitled to qualified immunity under §

---

[2] As the district court noted, a claim for malicious prosecution under § 1983 should be understood as a Fourth Amendment claim for unreasonable seizure. *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000) (applying a rule that a "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort").

1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Dist. Of Columbia. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards,* 566 U.S. 658, 664 (2012)).  Therefore, if probable cause existed such that there was no Fourth Amendment violation, Norris would be entitled to qualified immunity on the claim against him in his individual capacity.[3]  Finally, Spivey's state law malicious prosecution claim fails if we find probable cause.[4]

We hold that Spivey's arrest warrant was supported by probable cause and therefore Spivey's Fourth Amendment claim against Norris in his individual capacity and state law claim for malicious prosecution against Norris fail.  We set out the standard for evaluating whether probable cause existed, describe its application to the facts before us, and explain our conclusion with respect to summary judgment in turn.

---

[3] We construe Spivey's § 1983 claim for damages against Norris in his official capacity as a suit against the state, which is barred by Eleventh Amendment Immunity. *See Kentucky v. Graham*, 473 U.S. 159, 165, 169 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. . . .  The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.") (internal quotation marks omitted).  To the extent that Spivey requests injunctive relief on her official capacity claim, her claim also fails because she has not shown a constitutional injury.  *See id*. at 166 (In "an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law."); *See infra* Sections II.B., II.C.

[4] Under North Carolina law, a state law claim for malicious prosecution requires the plaintiff to show that  "(1) the defendant initiated the earlier proceeding; (2) malice on the part of the defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." *Beroth Oil Co. v. Whiteheart*, 618 S.E.2d 739, 746 (N.C. Ct. App. 2005).

A.

"Probable cause 'is not a high bar.'" *Wesby*, 138 S. Ct. at 586 (quoting *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014)). "While probable cause requires more than 'bare suspicion,' it requires less than that evidence necessary to convict." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). "'Probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* In determining whether probable cause existed, we look to two factors: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016) (quoting *Pritchett*, 973 F.2d at 314). Probable cause is an objective inquiry. *Gray*, 137 F.3d at 769. "[W]e examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; we do not examine the subjective beliefs of the arresting officers to determine whether *they* thought that the facts constituted probable cause." *Id.*

B.

The facts known to Cherry and Norris at the time that Cherry sought the warrant reasonably support a belief that there was probable cause to think Spivey had unlawfully obtained the Percocet. Norris informed Cherry of the information that he received that Spivey tried to fill a forged prescription. Cherry, a trained law enforcement officer,

9

reviewed the prescription and believed that it had been altered. According to Cherry, Lawson stated that (1) Lawson had prescribed Spivey twenty tablets in his notes, and (2) that Lawson never prescribes more than twenty tablets. Furthermore, Spivey herself admitted to Cherry and Norris that sometimes her husband took her pain medication without her consent. This conduct supports a probable cause determination because it matches the contours of the crime, mainly that Spivey was unlawfully in possession of the Percocet, *see* N.C. Gen. Stat. § 90-95(h)(4), by way of forgery, *see* N.C. Gen. Stat. § 90-108(a)(10). *See Gray*, 137 F.3d at 769. In other words, the arrest warrant was based on far more evidence of unlawful conduct than a "bare suspicion." *Id.*

C.

Even if we credit Lawson's deposition testimony, there is no genuine dispute of material fact that there was probable cause to arrest Spivey. The deposition testimony that Lawson offers which denies parts of Cherry's account of their meeting does not by itself create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). First, the tips against Spivey, the fact that Cherry upon initial review thought that the prescription had been altered, and the fact that neither party disputes that Lawson wrote twenty tablets in Spivey's chart is enough to "provide a probability on which reasonable and prudent persons would act," as required by probable cause even if there was a possibility that the discrepancy was the result of an honest mistake on Lawson's part. *See Gray*, 137 F.3d at 769. "[P]robable cause does not

10

require officers to rule out a suspect's innocent explanation for suspicious facts." *Wesby*, 138 S. Ct. at 588. Nor does probable cause require proof beyond a reasonable doubt. *See id.* ("As we have explained, 'the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts.'") (quoting *Illinois v. Gates,* 462 U.S. 213, 244 n.13 (1983)).

Furthermore, "[a]lthough an officer may not disregard readily available exculpatory evidence of which he is aware," Spivey does not present evidence that Lawson made Cherry aware of any exculpatory evidence during their meeting. *See Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000). Lawson did not state in his deposition that he made Cherry or Norris aware of any facts that would undermine a probable cause determination and make the disputed account of the meeting material. He did not say that he told the investigating officers that the prescription for thirty pills was in his handwriting or that he told the investigating officers that he made a mistake on Spivey's chart. He simply denied seeing the prescription altogether. Looking objectively, as we must, at the facts, of which Cherry was aware, there was probable cause that Spivey committed the crimes listed in the arrest warrant. Therefore, because probable cause existed apart from the disputed account of the meeting, the district court did not err in granting summary judgment to Norris on Spivey's § 1983 Fourth Amendment claim and her state law malicious prosecution claim.

11

III.

Spivey also appeals the district court's grant of summary judgment on her § 1983 First Amendment and Fourteenth Amendment, intentional and negligent infliction of emotional distress, abuse of process, and bond claims.

We have reviewed the briefs and the joint appendix, and we conclude that the district court correctly granted summary judgment against Spivey on these claims, for the reasons stated in the district court's thorough opinion. *See Spivey*, 2017 WL 1184103.

IV.

Accordingly, the judgment of the district court is

*AFFIRMED*.