**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1067**

JUSTIN SHERILL KELLY,

       Plaintiff – Appellant,

v.

SARAH H. CONNER; NORTH CAROLINA PRIVATE PROTECTION
SERVICES BOARD; MICHAEL FORD; WILLIAM MURRAY; GILBERTO
NARVAEZ; JASON KERL; ERIC MICKLEY; RODNEY MONROE; CITY OF
CHARLOTTE; JAMES KEVIN GALYAN,

       Defendants – Appellees.

Appeal from the United States District Court for the Western District of North Carolina,
at Charlotte.  David Shepardson Cayer, Magistrate Judge.  (3:13-cv-00636-DSC)

Argued:  March 19, 2019                    Decided:  April 18, 2019

Before AGEE and FLOYD, Circuit Judges, and DUNCAN, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Cynthia Earline Everson, EVERSON LAW FIRM, PLLC, Concord, North
Carolina, for Appellant.  Jeffrey P. Gray, BAILEY & DIXON, Raleigh, North Carolina;
Robert Dennis McDonnell, Charlotte, North Carolina; Ryan Y. Park, NORTH
CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.
**ON BRIEF:** Joshua H. Stein, Attorney General, Matthew W. Sawchak, Solicitor
General, Michelle A. Liguori, Solicitor General Fellow, NORTH CAROLINA
DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee Sarah Conner.

Richard Harcourt Fulton, OFFICE OF THE CITY ATTORNEY, Charlotte, North Carolina, for Appellee City of Charlotte.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A series of state and federal charges were brought against Justin Kelly in relation to his possession of a firearm while working as a security guard at a Charlotte, North Carolina nightclub. After the charges were resolved or dismissed, Kelly filed a lawsuit alleging federal constitutional and state tort claims against various defendants who were involved in his prosecution. The district court granted summary judgment to the defendants on Kelly's claims, which he now appeals. For the reasons that follow, we affirm.

I.

Following two encounters with the Charlotte-Mecklenburg Police Department in January and October 2011, Kelly was arrested on both occasions for violating the Private Protective Services Act (the "Act"), a North Carolina law mandating the licensing and registration of armed private security guards. *See* N.C. Gen. Stat. § 74C-1 *et seq.* In both instances, officers came across Kelly—who provided security for a nightclub's parking lot—carrying a firearm while working. In January, Kelly discharged his firearm during an incident with a patron, and in October, officers inspecting area nightclubs observed Kelly carrying a firearm. During Kelly's second arrest, officers removed the firearm and a knife from Kelly's person as well as another firearm that officers observed in his nearby car.

After each of the two arrests, the local district attorney's office prosecuted Kelly for violating the Act. He was acquitted of the charge stemming from the January arrest, and the district attorney's office dismissed the charge arising from the October arrest

3

after a federal grand jury indicted him for possessing a firearm after a conviction for a crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9) (based on a 2001 misdemeanor conviction in Cabarrus County, North Carolina of assault on a female, N.C. Gen. Stat. § 14-33(c)(2)). The district court later dismissed the indictment after concluding that Kelly had not been convicted of a crime of domestic violence within the meaning of § 922(g)(9) such that he was not prohibited by federal law from possessing a firearm.

After the federal charge was dismissed, Kelly filed suit against the Private Protective Services Board (the "Board"), then a division of the North Carolina Department of Justice tasked with administering the Act; Sarah Conner, an investigator for the Board who was involved in both of Kelly's prosecutions; Officer Jason Kerl, one of the Charlotte-Mecklenburg police officers who arrested Kelly in October 2011; and the City of Charlotte (collectively, the "defendants").[1] Kelly asserted a host of constitutional and state tort claims stemming from the arrests and prosecutions. First, Kelly's complaint raised claims under 42 U.S.C. § 1983, including alleged violations of his rights to be free

---

[1] Kelly also sued private citizen James Kevin Galyan. After Galyan failed to answer the complaint, the clerk of the district court entered a default judgment against him. Kelly argues that because his claims against the defendants allege joint and several liability, any favorable decision for the other defendants does not affect Galyan's liability and the claims against him should proceed to a trial on damages. *See Frow v. De La Vega*, 82 U.S. 552, 554 (1872). But where a "defending party establishes that plaintiff has no cause of action [whether on a motion to dismiss or a motion for summary judgment] . . . this defense generally inures also to the benefit of a defaulting defendant." *United States ex rel. Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967) (internal quotation marks omitted); *see also Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (same). We therefore find Kelly's argument unavailing.

from false arrest, unreasonable search and seizure, and selective prosecution; his right to *Brady*[2] evidence; and his right to the return of his firearms (Count Nine). Second, Kelly asserted analogous state tort claims (Counts One through Eight).[3] Third, Kelly requested a declaratory judgment that: (1) the Act does not apply to armed security guards who work for non-security businesses that serve alcohol, like his nightclub employer (Count Eleven); and (2) he has a Second Amendment right to possess firearms, and the City of Charlotte cannot bar him from possessing them based on his 2001 assault conviction (Count Twelve). Finally, he challenged the constitutionality of the Act, contending it was void for vagueness (Count Thirteen).

The district court granted the defendants' cross motion for summary judgment and denied Kelly's. First, with respect to Kelly's § 1983 claims, the district court granted the defendants summary judgment because they were entitled to qualified immunity. The district court also made a number of findings concerning specific claims and actors. With respect to the false arrest claim, the court found Conner and the police officers had probable cause to arrest Kelly for violating the Act when they saw him carrying a firearm while working as a security guard and, upon questioning, he confirmed he was not registered with the Board. With respect to the unreasonable search and seizure claim, the court concluded the search of Kelly's person and the seizure of the weapons were lawful

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] These claims include false arrest, intentional and negligent infliction of emotional distress, malicious prosecution, abuse of process, negligent supervision, trespass to chattels and conversion, and violation of the North Carolina Racketeer Influenced and Corrupt Organizations Act.

5

under the search incident to arrest and plain view doctrines. And finally, Kelly could not assert municipal liability against the City of Charlotte on the basis of these allegations because no constitutional violations had occurred.

Second, the district court granted summary judgment on the state tort claims; as the arrest, search, and seizure were lawful, Kelly could not demonstrate the necessary elements for these claims. Third, the district court rejected Kelly's constitutional challenge to the Act, finding the Act was not void for vagueness.

Kelly then appealed these summary judgment rulings. This Court dismissed the appeal as interlocutory because the district court had not yet addressed Kelly's claims for declaratory relief. On remand, the district court granted the defendants' motion for summary judgment on the declaratory judgment claim concerning the applicability of the Act, finding Kelly was subject to the Act's registration requirements. The district court also granted the City's motion for summary judgment on Kelly's declaratory judgment claim under the Second Amendment, finding he could not legally carry a firearm under the circumstances that led to his arrest. The district court then entered a final judgment dismissing his complaint in full.

Kelly again appeals, raising four primary arguments. First, he challenges the district court's finding of qualified immunity as to the defendants on his § 1983 claims. Next, Kelly asserts that the district court incorrectly granted summary judgment to the

6

defendants on the state tort claims.[4] He also challenges the district court's resolution of his requests for a declaratory judgment. And finally, Kelly submits that the Act is void for vagueness. We address these claims in turn and affirm the district court's judgment.

## II.

We begin with the qualified immunity issue. Qualified immunity—an affirmative defense to liability under § 1983—"shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016) (internal quotation marks omitted).

Kelly presents two challenges to the district court's findings: that Conner was not entitled to qualified immunity because she was not a government official, and that the defendants violated his clearly established rights to be free from selective prosecution, to obtain *Brady* evidence, and to possess firearms,[5] such that they are also not entitled to qualified immunity. Upon review, we conclude that the district court did not err.

## A.

---

[4] Kelly does not appeal the grant of summary judgment to the defendants on one of his state claims, the North Carolina RICO claim. N.C. Gen. Stat. § 75D-4.

[5] Although the parties dispute whether the district court entered a final judgment with respect to these claims, we conclude that the district court passed on the "central component" of these issues: the defendants' alleged misapplication of the Act. *See Porter v. Zook*, 803 F.3d 694, 696, 699 (4th Cir. 2015). We are therefore satisfied we have jurisdiction to consider these claims pursuant to 28 U.S.C. § 1291.

7

As an initial matter, we conclude Conner was a government official for the purposes of a qualified immunity analysis. A government official is an "executive official," *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982), who performs discretionary functions which encompass investigative actions. *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) ("[A] prosecutor may engage in 'police investigative work' that is entitled to . . . qualified immunity."); *see also Goldstein v. Moatz*, 364 F.3d 205, 219 (4th Cir. 2004) (remanding for determination of whether agency investigators were entitled to qualified immunity); *Broam v. Bogan*, 320 F.3d 1023, 1031 (9th Cir. 2003) (noting that examples of investigative functions include collecting "evidence and conducting interrogations to determine whether a crime has been committed and whether probable cause exists").

Under this standard, Conner was a government official. As an investigator for the Board, which was then a part of the North Carolina Department of Justice, she worked for the executive branch, and as part of her work for the Board, she questioned suspects and gathered evidence to determine whether violations of the Act had occurred, thereby engaging in discretionary functions. *See* N.C. Gen. Stat. § 74C-7 (2009) ("The Attorney General for the State of North Carolina shall have the power to investigate or cause to be investigated any complaints, allegations, or suspicions of wrongdoing or violations of this

8

Chapter involving individuals licensed, or to be licensed, under this Chapter.").[6]

Therefore, the district court did not err in its assessment of Conner's status.

B.

We also agree with the district court's conclusion that the defendants did not violate any clearly established rights. "To overcome qualified immunity, a plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Cannon v. Vill. of Bald Head Island*, 891 F.3d 489, 497 (4th Cir. 2018) (internal quotation marks omitted). But Kelly cannot meet the first prong with respect to any of the alleged violations.[7]

With respect to Kelly's selective prosecution claims, he must show the defendants intentionally treated him differently from other similarly situated persons and that the difference in treatment lacked a rational basis. *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005) (stating the standard for a "class of one" equal protection claim). But the record reveals that the defendants did not single Kelly out: the officers arrested him during a planned inspection of a number of nightclubs; the officers arrested another colleague on the same night for the same issue; and both Kelly and his colleague were

---

[6] The Secretary of Public Safety now has this power. N.C. Gen. Stat. § 74C-7 (2014).

[7] We note separately that the district court was also correct to grant summary judgment to the City of Charlotte because, as explained further below, Kelly has failed to demonstrate any constitutional violations. Municipalities may only be held liable for § 1983 violations when a plaintiff shows that his constitutional rights have been violated as a result of an official policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). But since Kelly has failed to demonstrate any constitutional violations, the City cannot be held liable under § 1983 for causing a constitutional violation through its policies or customs.

9

prosecuted for violating the Act. Kelly therefore cannot establish that the defendants intentionally treated him differently.

We turn next to Kelly's *Brady* claim. To establish a *Brady* violation, the evidence a criminal defendant seeks must have been (1) favorable to the defendant, either because it was exculpatory or impeaching, (2) material, in the sense that prejudice ensued, and (3) withheld by the government. *United States v. Sarihifard*, 155 F.3d 301, 309 (4th Cir. 1998). Kelly has failed to establish the first element.[8] The allegedly exculpatory evidence included email discussions amongst the Board members about the legislative history of the Act and whether the Act conflicted with North Carolina General Statute § 14-269.3. Kelly has failed to show how these emails would have been exculpatory because they would not have tended to disprove whether he had committed a violation of the Act. *Cf. Juniper v. Zook*, 876 F.3d 551, 566 (4th Cir. 2017) (noting that the factual inconsistency between the suppressed materials and the other evidence presented by the government is what renders suppressed materials exculpatory).

Finally, we turn to Kelly's due process and Second Amendment claims. We agree with the district court's conclusion that the defendants did not violate his rights by seizing and retaining his weapons. The initial seizure of Kelly's firearm from his person did not amount to a constitutional violation because it was lawful under either the plain view or search incident to arrest exceptions to the warrant requirement. *See Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) ("[I]f police are lawfully in a position from which

---

[8] As Kelly failed to establish the first element, it is unnecessary to address the other two elements.

10

they view an object, if its incriminating character is immediately apparent, . . . they may seize it without a warrant."); *United States v. Robinson*, 414 U.S. 218, 235 (1973) ("It is the fact of the lawful arrest which establishes the authority to search . . . .").

Furthermore, the defendants did not violate Kelly's Second Amendment or due process rights by retaining the firearms during the course of his criminal proceedings because a valid Fourth Amendment seizure allows the retention of a defendant's weapons until the criminal charge related to the seizure is dismissed. *See Walters v. Wolf*, 660 F.3d 307, 314–15 (8th Cir. 2011) (finding the "pivotal deprivation" giving rise to a § 1983 due process claim was law enforcement's continued refusal to return the defendant's firearms after the court had dismissed the charge). And that is what occurred in this instance: after the filing of the federal charge, federal agents retained Kelly's weapons and later returned the firearms to his father after the federal charge was dismissed (per Cabarrus County's request). The local police department also returned Kelly's knife. Furthermore, because federal agents were responsible for and did return the firearms, Kelly has failed to show that any of the defendants deprived him of due process. Altogether, we find no basis for disturbing the district court's grant of summary judgment to the defendants on these issues.

## III.

We next consider whether the district court properly granted summary judgment to the defendants on Kelly's state tort claims. Having considered the record on appeal and the arguments of the parties, we reject Kelly's challenges to the district court's holding.

11

In short, because the search, seizure, and arrest were lawful, Kelly cannot prove the necessary elements of his state tort claims. *See, e.g.*, *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 747 (N.C. 2012) (requiring a demonstration of wrongful possession of property to establish a conversion claim); *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990) (noting that, to establish a negligent infliction of emotional distress claim, a defendant must have negligently engaged in conduct that would have caused the plaintiff severe emotional distress); *Holleman v. Aiken*, 668 S.E.2d 579, 590 (N.C. Ct. App. 2008) (requiring extreme and outrageous conduct to prove an intentional infliction of emotional distress claim); *Beroth Oil Co. v. Whiteheart*, 618 S.E.2d 739, 747 (N.C. Ct. App. 2005) (finding that an abuse of process claim includes proving use of the legal process for an ulterior motive). We therefore affirm the grant of summary judgment on these claims.

IV.

We turn to Kelly's third challenge, which asserts the district court incorrectly rejected his two declaratory judgment claims. First, the district court denied Kelly's request to issue a declaratory judgment that the Act's registration requirements did not apply to him, instead concluding he was subject to the Act. Second, the district court concluded Kelly's claim for a declaratory judgment that he was generally entitled to carry a firearm could not succeed because he "could not legally carry his personal firearm under the circumstances that led to his arrest." J.A. 1450. We now address each claim.

A.

12

The Act requires any individual or company that engages in private protective services to be licensed in accordance with the Act's terms. Specifically, the Act provides that "[n]o private person, firm, association, or corporation shall engage in, perform any services as, or in any way represent or hold itself out as engaging in a *private protective services profession or activity* in this State without having first complied with the provisions of this Chapter." N.C. Gen. Stat. § 74C-2(a) (emphasis added); *see also* N.C. Gen. Stat. § 74C-8 (providing that "[a]ny person, firm, association, or corporation desiring to carry on or engage in the private protective services profession in this State shall be licensed in accordance with this Chapter"). Section 74C-3 defines "private protective services profession" as covering several broad categories of services and activities, including the "security guard and patrol profession." N.C. Gen. Stat. § 74C-3(a)(6). This profession is defined as encompassing (1) "any person, firm, association, or corporation that provides a security guard on a contractual basis for another person, firm, association, or corporation for a fee or other valuable consideration" who (2) performs one of a variety of protective functions. *Id.* The Act does not define "activity."

Section 74C-13(a) also requires individuals who carry firearms while providing private protective services to obtain firearm registration permits from the Board:

> It shall be unlawful for any person performing private protective services duties to carry a firearm in the performance of those duties without first having met the qualifications of this section and having been issued a firearm registration permit by the Board. A licensee shall register any individual carrying a firearm within 30 days of employment. Before engaging in any private protective services activity, the individual shall receive any required training prescribed by the Board.

13

N.C. Gen. Stat. § 74C-13(a). Relatedly, § 74C-13(b) prohibits companies from authorizing security guards to carry a firearm without such registration:

> It shall be unlawful for any person, firm, association, or corporation and its agents and employees to employ an armed security guard . . . and knowingly authorize or permit the armed security guard . . . to carry a firearm during the course of performing his or her duties as an armed security guard . . . if the Board has not issued him or her a firearm registration permit under this section or if the person, firm, association, or corporation permits an armed security guard . . . to carry a firearm during the course of performing his or her duties whose firearm registration permit has been suspended, revoked, or has otherwise expired . . . .

*Id.* § 74C-13(b).

The district court concluded that because Kelly's "duties clearly [fell] within those described" as part of the private protective services profession, he was subject to the Act's registration requirements if he wanted to carry a firearm with him while working. J.A. 1450. At a minimum, the district court noted, because he was responsible for providing security for the nightclub's parking lot and carried a firearm while doing so, the provisions of § 74C-13 applied to him.

We agree. The plain text of the Act requires anyone who carries a firearm while engaging in private protective services activities to register with the Board. Although Kelly argues that only those in the "private protective services profession" need register with the Board—and that neither he nor the nightclub fell under that definition—Kelly was nonetheless subject to the Act because § 74C-2(a) plainly states that "no private person, firm, association, or corporation shall engage in . . . *a private protective services profession or activity* in this State without having first complied with the provisions of this Chapter." N.C. Gen. Stat. § 74C-2(a). Thus, Chapter 74C regulates anyone who

14

engages in "private protective services activity" inside or outside the defined profession. *Id.* And although the Act does not specifically define "activity," it does list a number of functions in defining "private protective services profession," from which we may glean what constitutes private protective services activity. *See* N.C. Gen. Stat. § 74C-3(a)(6). These functions include "prevention, observation, or detection of any unauthorized activity on private property," "protection of patrons and persons lawfully authorized to be on the premises," and "control regulation, or direction of the flow or movement of the public." *Id.* Kelly concedes he performed these functions. Therefore, we agree that Kelly engaged in private protective services activity and was subject to the Act's registration requirements. Furthermore, under the provisions of § 74C-13(a), it is "unlawful for *any person* performing private protective services duties"—such as Kelly—"to carry a firearm in the performance of those duties" if not registered with the Board. N.C. Gen. Stat. § 74C-13(a) (emphasis added). Altogether, the Act plainly applied to Kelly.[9] We therefore affirm the district court's grant of summary judgment to the defendants on this claim.

---

[9] Kelly also argues that North Carolina General Statute § 14-269.3—which criminalizes carrying a firearm "into" an establishment where alcoholic beverages are sold and consumed, but exempts persons "registered or hired as a security guard" by the owner of the establishment—excuses him from complying with the Act's registration requirements. N.C. Gen. Stat. § 14-269.3(b)(4). We disagree. First, § 14-269.3(b)(4) is an exemption to the general criminal prohibition in § 14-269.3(a), not an exemption to the application of the Act. Furthermore, § 14-269.3(b)(4) does not say that such security guards are exempt from Chapter 74C because it specifically contemplates that these guards will be "*registered* or hired." *Id.* (emphasis added). Second, Kelly worked as a security guard in the parking lot, not inside the nightclub. Thus, when Kelly was arrested, he was not *inside* an establishment serving alcohol, so even if § 14-269.3(b)(4) were an exemption to the Act, it would not apply to Kelly.

B.

We also affirm the district court's decision not to enter a declaratory judgment against the City allowing Kelly to possess firearms when he is not working as a security guard despite his misdemeanor conviction. Title 28 U.S.C. § 2201(a) requires an actual case or controversy before a district court may issue a declaratory judgment. *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 167–68 (4th Cir. 1990) (setting forth two requirements for a district court to have jurisdiction to issue a declaratory judgment: (1) an Article III case or controversy and (2) satisfaction that declaratory relief is appropriate). But the City has never challenged Kelly's ability to possess a firearm outside of the Act's requirements. And because no controversy about his right to possess a firearm has ever existed between Kelly and the City, we affirm the district court's refusal to issue a declaratory judgment on this issue.

V.

That leaves us with the final issue: whether the Act is unconstitutionally vague. The district court denied Kelly's motion for summary judgment, finding that he had failed to articulate how the Act was "too ambiguous" such that it impacted his constitutional rights. J.A. 958, 37. We find no basis for disturbing the district court's conclusion. The plain text of the Act, as discussed above, gave Kelly fair notice that he was subject to the Act's registration requirements. Furthermore, Kelly's argument that the Act is unconstitutionally vague because it was impossible for him to comply with its registration requirement is incorrect: Kelly could have complied with it by refraining

16

from carrying a firearm while working. In fact, the nightclub owner neither required nor permitted Kelly to carry a firearm while on duty. Accordingly, we affirm the district court's grant of summary judgment to the defendants on this issue.

VI.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*